George R. WARNER, Plaintiff,

v.

AMERICAN CABLEVISION OF
KANSAS CITY, INC.,
Defendant.

Civ. A. No. 87–2130–S.

United States District Court,
D. Kansas.

Oct. 18, 1988.

Steven D. Treaster, Fairway, Kan., for plaintiff.

Curtis E. Woods, Spencer, Fane, Britt & Browne, Kansas City, Mo., J. Nick Badgerow, Spencer, Fane, Britt & Browne, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment. This appears to be the first case interpreting the disclosure and recordkeeping provisions of the Cable Communications Policy Act of 1984, ("Cable Act"), 47 U.S.C. § 521 *et seq.* Plaintiff George R. Warner ("Warner") brought this suit against the company which formerly provided cable television services to him, claiming it violated several provisions of 47 U.S.C. § 551.

The defendant has requested oral argument on this motion. The court has determined that oral argument would not be of material assistance in the determination of this matter. Rule 206(d), Rules of Practice of the United States District Court for the District of Kansas. Therefore, the court will proceed to dispose of the motions before it.

The uncontroverted facts for purposes of this motion are as follows. Defendant is a

"cable operator" and a provider of "cable service," as those terms are defined in the Cable Act; *see* 47 U.S.C. § 522(4) and (5). On March 11, 1986, defendant began providing "cable service" to plaintiff. Defendant contracted with Hickerson's CATV, Inc. ("Hickerson's") to install cable service, and a representative of Hickerson's installed Warner's service on March 11, 1986. Defendant had instructed Hickerson's representatives to provide a copy of American's "subscriber handbook" to each new subscriber at the time of installation. However, Warner claims he did not receive a copy of the handbook. On June 15, 1986, Warner received a "bill stuffer" with his regular monthly bill. Both the subscriber handbook and bill stuffer contained a Cable Act disclosure statement. The last two pages of the subscriber handbook contain, in part, the following language:

> The only individual subscriber information that [American] collects is information that is necessary to provide or improve cable service to its subscribers. [American] collects some demographic information which is used for marketing and research purposes. Subscriber service information is also used to determine whether persons receiving cable service are authorized to do so. This information is not maintained by [American] nor anyone retained by [American] any longer than is necessary for these business purposes. An individual subscriber's record is available for review (and correction, if necessary) by that subscriber during normal business hours at our local cable system office.

> [American] sometimes discloses subscriber information to independent contractors and outside research consultants who are retained by [American] to help it improve [American's] cable service. In addition, [American] cable system occasionally provides lists of the names and addresses of their subscribers to other companies, including program guide distributors.

A list of office hours and telephone numbers for American appeared on page two of the subscriber handbook. Language on the bill stuffer was substantially similar, except that the first sentence reads as follows: "The only individual customer information that we collect is information which will help us to provide you with new, improved and expanded services," and the last sentence of the second paragraph states that customer names and addresses are "occasionally" provided to "services that use the information for purposes not related to providing cable service."

Warner discontinued his service approximately eight (8) months later. At the time of installation and continuing to this date, American has retained information regarding Warner's service, including a copy of the original work order for the installation, plaintiff's name, address, telephone number, account number, the initial level of service to which he subscribed, the level of service at the time service was disconnected, the location of the cable outlets in his home, the number of cable outlets, the date of installation, date of disconnection, billing dates, and plaintiff's billing, payment and refund history. American disclosed this information to a subcontractor which handled monthly billing of subscribers; it also disclosed the information to Hickerson's so they could complete the installation requested. On one occasion, a list of subscribers was sold to the Greater Kansas City March of Dimes. American states that it discloses customer information to collection agencies for purposes of collecting past due accounts, and it retains all customer information for six years after disconnection for financial accounting and tax purposes. It retains the information regarding Warner to this date.

Defendant contends that the Cable Act does not apply to it, and even if it does, its disclosure and record retention practices and policies comply with the requirements of that Act. It also contends that plaintiff is not entitled to relief because he has not suffered actual damages.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material"

only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In 1984, Congress enacted the Cable Act to establish national policy and guidelines for the rapidly expanding cable television industry. 47 U.S.C. § 521. Section 551 of that Act is entitled "Protection of Subscriber Privacy," and it provides that cable operators are required to make certain disclosures to their customers regarding the personal information the operator retains, the purposes for which it retains that information, the circumstances under which the information will be disclosed to third parties, and the time after which the information will be destroyed. Section 551 also provides for a private right of action by a subscriber aggrieved by a cable operator's violation of the statute.

American initially contends that the Cable Act does not apply to it, because the Act only addresses providers of "two-way cable service." * The court finds no support for defendant's argument in the text of the statute or in the legislative history. Section 551(a)(1) requires all "cable operator[s]" to provide the required notice to its subscribers, and section 551(e) requires a "cable operator" to destroy personally identifiable information after it is no longer necessary for the purpose for which it was collected. A "cable operator" is defined in section 522(4) as:

> any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system.

"Cable service" is defined at section 522(5)(A) as including "one-way transmission" to subscribers of video or other programming. The language of the statute appears clear and unambiguous, and one-way cable providers are included within its scope. Even though some of the legislative history reflects the fact that Congress' main concern was with two-way systems, the Act's scope of coverage is never limited to two-way providers. *See, e.g.*, H.R.Rep. No. 934, 98th Cong., 2d Sess., at 29, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4666. ("Cable systems, *particularly those* with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber.") (Emphasis added). Defendant admits it is a "cable operator", and its argument is rejected.

[2] American also contends that Warner's claims are not within the scope of the Cable Act because it does not collect its information "through the cable system." Defendant apparently bases its argument on a statement made in a preliminary House Report on the bill, which stated that

---

* Two-way cable systems are those capable of receiving, collecting, monitoring or obtaining sig-

nals from a subscriber.

the Act created privacy protection for "individually identifiable information collected by a cable operator *over the cable system.*" *Id.* at 76, 1984 U.S.Code Cong. & Admin. News at 4713 (emphasis added). However, the only place this limiting language appears in the Cable Act itself is at section 551(b)(1); that section limits the ability of cable operators to collect personally identifiable information through the cable system. That section is unrelated to the provisions in question here: section 551(a)(1)'s disclosure requirements or section 551(e)'s record retention limitations. Defendant's argument is without merit.

■ Defendant also contends that section 551 does not apply in this case because the information it has collected is not "personally identifiable." This argument is specious. It would be hard to conceive of information which more personally identifies an individual than his name, address, and telephone number. Section 551(a)(2) provides that "personally identifiable information" does not include aggregate data not identifying particular persons. American's data certainly identifies Warner personally, and this argument is rejected.

■ Since the court has determined that section 551 is applicable in this case, it will proceed to determine whether American has violated that provision. The initial step which cable operators must take in protecting subscriber privacy is set out in section 551(a)(1):

At the time of entering into an agreement to provide any cable service or other service to a subscriber and at least once a year thereafter, a cable operator shall provide notice in the form of a separate, written statement to such subscriber which clearly and conspicuously informs the subscriber of—

(A) the nature of personally identifiable information collected or to be collected with respect to the subscriber and the nature of the use of such information;

(B) the nature, frequency, and purpose of any disclosure which may be made of such information, including an identification of the types of persons to whom the disclosure may be made;

(C) the period during which such information will be maintained by the cable operator;

(D) the times and place at which the subscriber may have access to such information in accordance with subsection (d); and

(E) the limitations provided by this section with respect to the collection and disclosure of information by a cable operator and the right of the subscriber under subsections (f) and (h) to enforce such limitations.

Warner contends that American failed to comply with section 551(a)(1) in all respects. First, he claims that American failed to provide *any* section 551(a)(1) notice to him "[a]t the time of entering into an agreement to provide ... cable service." He notes that despite American's instructions to Hickerson's to distribute a subscriber handbook to each new customer at the time of installation, the representative of Hickerson's failed to supply him with a handbook. American responds that since it did instruct Hickerson's to distribute the handbooks, Warner most likely received one. Further, it contends that a plaintiff should not be able to make out a case under section 551(a)(1) simply by stating, "I don't remember receiving the book." The court notes defendant's concern, but finds that American has failed in this particular case to present any evidence which might contradict Warner's statement. Therefore, the court finds that American did violate the first sentence of section 551(a)(1) by failing to provide any notice to Warner of his section 551(a)(1) rights at the time of installation.

■ Additionally, Warner claims that the notice American eventually provided to him in a bill stuffer failed to adequately set out the information required by subsections (A) through (E) of section 551(a)(1). Subsection (A) requires the cable operator to set out in a separate, written statement the "nature of personally identifiable information collected or to be collected with respect to the subscriber and the nature of the use of such information." American's bill stuf-

fer informed the new subscriber that American retained individual subscriber information which would assist it in providing the customer with "new, improved and expanded services." The notice also informs the subscriber that "some demographic information" is collected. Warner contends that these statements are so general as to be meaningless, for they tell the subscriber nothing about the "nature of personally identifiable information collected or to be collected." 47 U.S.C. § 551(a)(1)(A).

The court agrees. The statement that information is retained only to assist American in providing "new, improved and expanded services" sounds more like an advertising pitch than a privacy disclosure. It tells the subscriber nothing about what personally identifiable information is retained by the cable operator. Nor does the statement "some demographic information" tell the subscriber anything. The statement becomes especially meaningless when qualified with the word "some"; it leaves the cable operator full latitude to collect and retain any type of demographic information without providing any meaningful disclosure to its customers. The court does not desire to compose a notice that would comply with section 551(a)(1)(A). However, since American tells the court that it retains only the personal information obtained from the customer at the time he orders service, along with information concerning the level of his service, the number and location of cable outlets in his home, and the customer's billing history, it seems obvious that American could also tell its customers this. A short statement to this effect would not be burdensome to the cable operator, and would easily bring American into compliance with section 551(a)(1)(A).

■ Likewise, American's statement of the "nature of the use of such information" is defective but easily remedied. American tells its subscribers that it uses the information collected to provide "new, improved and expanded services," to conduct marketing and research, and to "determine whether persons receiving cable service are au-

thorized to do so." While this statement is more informative, it is incomplete, because it fails to tell the customer what American has told the court: that personally identifiable information is also retained for accounting and tax purposes. While American may be correct that such uses should be obvious, section 551(a)(1)(A) does not exempt information which may be obvious to the subscriber. Instead, American must inform the customer of the nature of all uses of personally identifiable information.

■ Subsection (B) requires that the cable operator disclose to the subscriber the "nature, frequency, and purpose of any disclosure which may be made" of personally identifiable information, "including the types of persons to whom the disclosure may be made." American tells its customers that it "sometimes" discloses personally identifiable information to "independent contractors and outside research consultants who are retained by [American] to help it improve [American's] cable service," and it "occasionally" discloses its customers' names and addresses to "services ... not related to providing cable service". The court finds at least two flaws with this disclosure. First, the statement that American discloses its customers' names and addresses to "services ... not related to providing cable service" is completely meaningless. Congress required cable operators to identify the "types of persons to whom the disclosure may be made." Surely Congress intended that the cable operator tell its customer more than the fact that it does disclose his name and address to other anonymous third parties. If customer lists are provided to program guide distributors, American should say that. If customer lists are sold to charitable organizations for use in fund-raising drives, American should say that. But saying they disclose to "unrelated services" falls far short of the requirements of section 551(a)(1)(B).

Secondly, it is apparent from the defendant's briefs that its section 551(a)(1)(B) disclosure is incomplete. American also provides customer information to subcontractors who install service and issue monthly

bills to customers, and to collection agencies when accounts are past due. American is required by section 551(a)(1)(B) to inform its customers of these facts, and is in violation of the Cable Act for failing to do so.

■ Warner next contends that American is in violation of section 551(a)(1)(C) for failing to specify the time period during which American will retain the personally identifiable information. American tells its customers that it retains the information only as long as "is necessary for [the stated] business purposes." American tells the court that it retains personally identifiable information not only as long as the customer has cable service and has paid his account in full, but it also retains the information for six years for accounting and tax purposes. American fails to tell its subscribers this, and is in violation of section 551(a)(1)(C).

■ Warner also claims that American violated section 551(a)(1)(D) by failing to set forth with sufficient specificity the "times and places at which the subscriber may have access to such information." American tells its subscribers that their records are "available for review (and correction, if necessary) ... during normal business hours at our local cable system office." Warner complains that "business hours" are not set out specifically in the notice. The court does not believe that such a technical interpretation of the Cable Act is necessary in this case. American has informed its subscribers that they may visit its office at anytime it is otherwise open and may review their records. Some offices may consider "normal business hours" to be 8:30 A.M. to 5:00 P.M. Monday through Friday, others may begin the day at 8:00 A.M., still others may be open on Saturdays. The court believes that especially when a cable operator has several offices with differing office hours among them, a statement that records are available during "normal business hours" substantially complies with section 551(a)(1)(D). The court will not find a violation of the Cable Act in this instance.

■ Finally, Warner contends that the notice fails to comply with subsection (E), because it wholly fails to "clearly and conspicuously" spell out "the limitations provided by [the Cable Act] with respect to the collection and disclosure of information by a cable operator and the right of the subscriber ... to enforce such limitations." The only mention made of the subscribers' rights regarding information collection and disclosure, and their right to bring an action to enforce those rights, is in the actual text of section 551 set out at the end of the disclosure. The text is set out in smaller type than that used for the rest of the disclosure statement, and the subscribers' rights and the provisions for a private cause of action are buried in the full text of the section. The court finds that this does not meet the "clear and conspicuous" requirement for several reasons. It is set out in smaller type than the rest of the disclosure, and it is buried in the full text of section 551 and therefore hard to find. This hardly meets the requirement that it be "conspicuous." Further, statutory language is probably not "clear" to the lay reader without additional explanation. The cable operator must at least make some attempt to tell the subscriber in plain language that the Cable Act restricts its ability to collect and disclose personally identifiable information. The cable operator should go on to summarize the restrictions placed on the cable operator, and inform the subscribers that they may bring a private action if the cable operator violates the requirements of the Cable Act. Since American wholly failed to inform the subscribers of this information, it is in violation of section 551(a)(1)(E).

■ Once the cable operator makes the disclosures required by section 551(a)(1), it must take additional steps to protect the subscribers' privacy. Section 551(e) provides that a "cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information." Warner argues that American has violated section 551(e) because it continues to retain person-

ally identifiable information concerning Warner after his account has terminated. He argues that the information is no longer needed to provide him with "new, improved and expanded services," to conduct marketing and research, or to "determine whether persons receiving cable service are authorized to do so." While the court agrees that information concerning Warner's account is no longer needed for these purposes, the information is required for accounting and tax purposes. Defendant states that it is required to retain such records for six (6) years. Section 551(e) does not require the cable operator to destroy personally identifiable information once it is no longer needed for the purposes *disclosed* in the section 551(a) statement; instead, it requires American to destroy the information once it is no longer needed "for the purpose for which it was collected." Since one of the purposes for collecting the information was accounting and tax preparation, the information may be retained for up to six years. Defendant has not violated section 551(e) by retaining Warner's account records, but would be in violation if it did not destroy the information after six (6) years.

The court has determined that American violated the Cable Act by failing to make proper disclosures as required by section 551(a)(1), but American did not violate section 551(e) by failing to destroy Warner's account information after service was terminated. American next argues that despite any violations of the Cable Act, Warner is not entitled to recover damages because he has not suffered actual injury.

Section 551(f) of the Cable Act provides as follows:

(1) Any person aggrieved by any act of a cable operator in violation of this section may bring a civil action in a United States district court.

(2) The court may award—

(A) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(B) punitive damages; and

(C) reasonable attorneys' fees and other litigation costs reasonably incurred.

American contends that Congress did not intend to provide a "windfall" to an individual whose privacy has not been invaded in violation of the Cable Act and who has therefore not suffered individual injury. American points to a preliminary House Report on the Cable Act which noted that the "remedies are identical to the wiretap statute, 18 U.S.C. [2520] (sic)." H.R.Rep. No. 934, 98th Cong., 2d Sess., at 78 (1984); *reprinted in* 1984 U.S.Code Cong. & Admin.News at 4715. In *Jacobson v. Rose*, 592 F.2d 515 (9th Cir.1978), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979), the Ninth Circuit held that the remedies provided in the federal wiretap statute were not available unless the plaintiff showed actual injury. *Id.* at 520–21. Likewise, defendant contends that the remedies available under section 551(f) are not available unless plaintiff shows he has suffered actual injury.

The court rejects this contention. It is guided in part by the fact that the House Report upon which American relies refers to an earlier version of the bill. The original House version provided that, "[a]ny cable subscriber *whose privacy is violated* in contravention of this section" is entitled to recover. S. 2172, 97th Cong., 1st Sess. § 610(i), *reprinted in* S.Rep. No. 518, 97th Cong., 1st Sess. at 41 (1981); S. 66, 98th Cong., 1st Sess. § 611(f), *reprinted in* S. Rep. No. 67, 98th Cong., 1st Sess. at 42 (1983) (emphasis added). The federal wiretap statute also provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the wiretap statute] may in a civil action recover." 18 U.S.C. § 2520(a). In other words, recovery under the wiretap statute is limited to those whose privacy is actually invaded. The text of the original Cable Act bill was changed and the more expansive language of section 551(f) was substituted, providing that any person *"aggrieved by any act* of a cable operator in violation of this section" could recover (emphasis added). American

violated section 551(a) by failing to make a privacy disclosure at the time it contracted to provide Warner cable service, and it further violated that same section by failing to make the proper disclosures in its bill stuffer. The court finds that Warner was thereby "aggrieved" by American's violation of the Cable Act. No finding of actual damages or an actual invasion of privacy is required. In fact, it is difficult to conceive of how a subscriber might suffer "actual" injury as a result of a cable operator's failure to timely provide the subscriber with the proper disclosures as required by section 551(a)(1). Yet, Congress did not limit recovery to those who are the subject of the violations under subsections (b) through (e). All violations of the Cable Act are actionable. The court finds that Congress intended section 551 of the Cable Act to operate as a "private attorney general" statute, similar to the Truth–in–Lending Act, 15 U.S.C. 1601 *et seq.* American has violated the Cable Act, and Warner has filed an action as an "aggrieved party" under that Act. Therefore, Warner is entitled to recover liquidated damages and attorney's fees.

The court must then determine the damages to which plaintiff is entitled. Section 551(f)(2)(A) provides that an aggrieved party under the Cable Act may recover actual damages or liquidated damages at the rate of $100 a day for each day of violation or $1,000, whichever is higher. American's failure to provide Warner with the required disclosure at the time the service was installed, and the inadequacy of the disclosure eventually made, cannot be considered a continuous violation measured in days. They instead appear to be one-time violations; Warner did not receive the disclosure on the day his cable service was installed, and the disclosure eventually made did not comply with section 551(a)(1), subparagraphs (A) through (E). Although the court has no guidance from prior case law or legislative history as to how to assess liquidated damages in such a case, the court finds that American committed two violations of the Cable Act: the failure to disclose and the inadequacy of the disclosure eventually made. Therefore, the court will assess $1,000 in liquidated damages for each violation, as provided in section 551(f)(2)(A). Pursuant to section 551(f)(2)(C), defendant shall also be liable to plaintiff for his reasonable attorneys' fees and other costs reasonably incurred in this action. Plaintiff will be ordered to submit an affidavit within ten (10) days from the date of this Memorandum and Order, detailing attorneys' fees and costs reasonably incurred. Defendant will then have ten (10) days to respond to the affidavit.

As a final note, the court rejects defendant's suggestion that this case is merely an "academic exercise." Defendant complains that plaintiff "conjures a spectre" of Big Brother that this case does not even suggest; it contends that plaintiff ignores the fact that the information in question was knowingly and voluntarily provided to defendant, and argues that the plaintiff would ask the court to conclude that "Congress intended to single out cable operators." But the defendant's statement ignores the protection of individual privacy evidenced in other Congressional acts, *see, e.g.,* Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401 *et seq.* (protecting individual's right to privacy in bank records); Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (protecting consumers' right to privacy in credit histories). And while plaintiff's injury may not seem as grave as that of a personal injury tort claimant or a victim of employment discrimination, Congress has recognized the importance of protecting individual privacy in an "information society." As one commentator has noted, "[i]nformational privacy will never be absolute in an information-based society ... [but] [u]nfettered access poses a serious threat to personal privacy, and ultimately to liberty itself." Rasor, *Controlling Government Access to Personal Financial Records,* 25 Washburn L.J. 417, 435–36 (1986). An action brought by an "aggrieved" party under the Cable Act seeks to insure personal privacy is protected. This court is bound to enforce that policy set out by Congress.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for sum-

mary judgment is granted in part and denied in part, as more fully set out in this Memorandum and Order. The Clerk of the Court shall enter judgment for plaintiff in the amount of $2,000. Plaintiff is ordered to submit an affidavit detailing his attorneys' fees and costs, along with a proposed journal entry of judgment, within ten (10) days from the date of this Memorandum and Order. Defendant shall then respond to the affidavit within ten (10) days. IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted in part and denied in part, as more fully set out in this Memorandum and Order.