**Keith WILSON, Jr., On behalf of himself and all others similarly situated, Plaintiff,**

v.

**AMERICAN CABLEVISION OF KANSAS CITY, INC., et al., Defendants.**

**No. 88–1259–CV–W–JWO–3.**

United States District Court, W.D. Missouri, W.D.

May 29, 1990.

See also 130 F.R.D. 404.

Jim Tom Reid, Dale K. Irwin, Slough, Connealy & Irwin, Kansas City, Mo., for plaintiff.

---

Curtis E. Woods, Spencer, Fane, Britt & Browne, Kansas City, Mo., Ronald L. Plesser, Piper & Marbury, Washington, D.C., for defendants.

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

ELMO B. HUNTER, Senior District Judge.

This case presently pends on defendants' motion to deny class certification and plaintiff's subsequently filed motion to grant certification of a class action. In addition to oral arguments held on March 22, 1990, the court has reviewed and considered the parties' briefs submitted on the issue of class certification. For the reasons stated below, we find and conclude that defendants' motions to deny class certification should be granted and that plaintiff's motion for class certification should be denied.

### I

Rule 23(b), Fed.R.Civ.P., provides that a class action "may be maintained ... if the prerequisites of subdivision (a) are satisfied," and additional requirements as set forth in subparagraphs (1), (2) or (3) are met. Plaintiff seeks certification of a Rule 23(b)(3) class in this case. If the prerequisites of subdivision (a), numerosity, common questions of law or fact, typicality of the representative party's claim and fair and adequate representation by the class representative are satisfied, the court must also find, under Rule 23(b)(3) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The nature of plaintiff's claim is such that the question of superiority of a class action under the circumstances of this case is the determinative issue. We find and conclude that plaintiff's motion to certify this case as a class action cannot be granted because a class action is not a superior method of adjudication in this particular case.

### II

Plaintiff has brought his suit under authority of 47 U.S.C. § 551(f) which is a part of the Cable Communications Act of 1984. That statute authorizes civil suits by person "aggrieved" by violations of the Cable Act's provisions that require disclosure by notice to cable subscribers containing information on collection and dissemination of personally identifiable information by cable operators.[1] The Cable Act does not address the potential for class actions brought under section 551(f) and no court has yet addressed the relationship between the Act and Rule 23.[2] Accordingly, the parties have analogized the analysis applied to class action certification questions in Truth-in-Lending Act (TILA) cases. We agree that the analogy is appropriate and of assistance in the determination of the class certification issue presented in this case.

TILA is a federal statute not unlike the Cable Act in that it requires disclosure to consumers of certain financial data relating to consumer credit transactions. Both statutes require disclosure notices and provide for civil liability upon violation of the respective statutes. Additionally, both stat-

---

**1.** 47 U.S.C. § 551(f) provides:

(1) Any person aggrieved by any act of a cable operator in violation of this section may bring a civil action in a United States district court.

(2) The court may award—

(A) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(B) punitive damages; and

(C) reasonable attorneys' fees and other litigation costs reasonably incurred.

(3) The remedy provided by this section shall be in addition to any other lawful remedy available to a cable subscriber.

**2.** The only reported case brought under § 551(f) is *Warner v. American Cablevision of Kansas City, Inc.,* 699 F.Supp. 851 (D.Kan.1988), *remanded with instructions to vacate,* No. 188–2820, (10th Cir. Jan. 6, 1989). In that case, which was not maintained as a class action, the district court awarded the individual plaintiff judgment of $1,000.00 for defendant's failure to provide notice at installation and $1,000.00 for privacy notice inadequacies.

utes, at the time the Cable Act was passed in 1984, provided for liquidated, statutory damages for violations of the disclosure provisions.

It must also be noted that the damage remedy provided by section 551(f) of the Cable Act was identical to that provided in the wiretap statute, 18 U.S.C. § 2520.[3] The Cable Act, however, recognized in section 551(f)(3) that the "remedy provided by this section shall be in addition to any other lawful remedy available to a cable subscriber." The additional available remedies would obviously include equitable and declaratory relief to which a cable subscriber may be entitled under the circumstances of a particular case. When the wiretap statute was enacted in 1968, it did not provide for the award of either equitable or declaratory relief. When the wiretap statute was amended in 1986, it followed the pattern of section 551(f) of the Cable Act and provided that appropriate relief would include both equitable or declaratory relief that could be obtained in either a private action or in a civil action initiated by the Attorney General.[4] It is thus reasonably clear that the Congress had the wiretap statute in mind

when it passed the Cable Act in 1984 and that it had the Cable Act in mind when it amended the wiretap statute in 1986. It is also clear that a class action is not superior to an individual action within the meaning of Rule 23(b)(3) in a case in which equitable or declaratory relief is sought under the Cable Act for such relief could be determined more conveniently in an individual action as opposed to a class action.

### III

Counsel have not cited and we have not found any case in which a plaintiff has sought to maintain a class action under the wiretap statute. Counsel have, we believe properly, directed attention to cases in which the plaintiff has sought to maintain a class action under TILA. The seminal case dealing with class action certification under TILA is *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y.1972).[5] That case established a principle application to TILA cases followed by a number of federal courts which denied class action status to claims which were

---

3. The wiretap statute provided for liquidated, statutory damages of $100 per day for each day of violation, or $1,000, whichever was higher, punitive damages, attorney's fees and other litigation costs. 18 U.S.C. § 2520(a) (1970). The legislative history of the Cable Act stated that the damage remedy provided in the Cable Act was "identical to that of the wiretap statute," *see* H.R. No. 934, 98th Cong., 2nd Sess. 19, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4715. Section 2520 was, of course, amended in 1986 subsequent to passage of the Cable Act. Congress, however, has not amended the Cable Act since its passage in 1984.

4. 18 U.S.C. § 2520 (1970), *amended by* 18 U.S.C. § 2520(b) (1986) and 18 U.S.C. § 2521 (1986). Section 2520(b) provides for (1) "such preliminary and other equitable or declaratory relief as may be appropriate," (2) "damages under subsection (c) and punitive damages in appropriate cases" and (3) "a reasonable attorney's fee and other litigation costs reasonably incurred." Section 2521 provides that a United States district court may, upon suit by the Attorney General of the United States, issue a restraining order, prohibition or take "other action, as is warranted to prevent a continuing and substantial injury" to individuals upon whose behalf the suit is commenced or to the United States.

5. The original civil liability section of TILA, as enacted in 1968, was the statutory enforcement

provision under which *Ratner* was decided. That original section, 15 U.S.C. § 1640(a)(1, 2) provided the following with respect to liquidated and actual damages:

(a) [A]ny creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this chapter to be disclosed … is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640(a)(1, 2) (1968).

15 U.S.C. §§ 1635–1639 describe the required disclosures by a creditor in various consumer credit transactions, as originally enacted under TILA. These disclosure requirements provide the analogy between TILA and the Cable Act as comparable statutes relative to subject matter and procedural requirements as well as the liquidated damages provisions in the original TILA as described above.

based upon technical violations of disclosure requirements, no claim for actual damages was made and liquidated damages, if awarded to a huge potential plaintiff class, would result in "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant." *Id.* at 416. The *Ratner* court accordingly denied class certification to plaintiffs. *Id.* In addition to the lack of actual damage suffered by plaintiffs due to defendant's violation of TILA, the court concluded that "the incentive of class-action benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel." *Id.* Judge Frankel thus held that a class action was not a superior method of adjudication within the meaning of Rule 23(b)(3).

Judge Edenfield followed *Ratner* in *Rogers v. Coburn Finance Corp. of DeKalb*, 54 F.R.D. 417 (N.D.Ga.1972). Judge O'Connor followed both *Ratner* and *Rogers* in *Wilcox v. Commerce Bank*, 55 F.R.D. 134 (D.Kan.1972), when class certification was denied in that case.

The plaintiff in *Wilcox* sought and was granted an interlocutory appeal by the Tenth Circuit. In *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336 (10th Cir.1973), Judge O'Connor's order denying class certification was affirmed.

Even after TILA was amended[6] to provide specifically for class action recoveries, but with a $500,000 cap on recoverable damages, various district courts have refused to certify TILA class actions where plaintiffs did not seek to recover actual damages and the statutory violations were at best technical rather than substantive or willful. ·

In *Fisher v. First National Bank of Omaha*, 548 F.2d 255 (8th Cir.1977), the Eighth Circuit affirmed the district court's refusal to certify a Rule 23(b)(3) class action, citing both the Tenth Circuit's opinion in *Wilcox* and Judge Frankel's opinion in *Ratner*. See 548 F.2d at 262.[7]

The Eleventh Circuit in *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir.1984), expressly adopted the rationale and the holding of the Sixth Circuit's opinion in *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398 (6th Cir.1980), on the issue of whether a class action may be said to be superior to an individual action in cases involving technical violations of TILA. In *Shroder* the district court first entered an order denying the plaintiff's motion for class certification and "subsequently entered an order granting [defendant] Suburban Coastal's motion for summary judgment and denying the [plaintiffs] Shroders' motion for summary judgment." *Id.* at 1374. Although the district court's summary judgment orders were reversed by the Eleventh Circuit, the district court's order denying class certification was affirmed.

---

**6.** In 1974, § 1640(a)(2) of TILA was amended to read as follows:

   (B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor; . . .

   In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. ·

15 U.S.C. § 1640, as amended P.L. 93–495, § 408, 88 Stat. 1500, Oct. 28, 1974.

In 1976, that section was further amended to provide a cap on class action recovery of the lesser of $500,000 or 1 percent of the net worth of the creditor. 15 U.S.C. § 1640, as amended P.L. 94–222, § 3(b), 90 Stat. 197, March 23, 1976.

**7.** The district court certified its denial of a Rule 23(b)(3) class action for an interlocutory appeal under 28 U.S.C. § 1292(b). Permission for such an appeal was denied by the Eighth Circuit for the obvious reason that plaintiff also alleged claims for alleged usury, for alleged anti-trust violations, and for various alleged civil rights actions. The determination on interlocutory appeal of the district court's class action decision obviously would not have materially advanced the ultimate determination of the entire litigation within the meaning of section 1292(b).

In ruling the class certification issue, the *Shroder* court noted that the district court, in express reliance on *Watkins,* concluded that " 'although technical violations of the complex TILA disclosure requirements are sufficient to establish the cause of action, the purpose of the Act is to insure compliance by creditors and not to punish an unwary violator.' "[8]  *Id.* at 1377.  The *Shroder* court held that the "district court, in denying class certification, correctly ruled that in this case a class action is not superior to other available methods for the fair and efficient adjudication of the controversy under Federal Rule of Civil Procedure 23(b)(3)."  *Id.*  In explanation, *Shroder* stated that:

> As in *Watkins,* the violations in the present case are technical in nature.  No evidence was presented to indicate any actual damage incurred by the appellants, or that appellants were misled or influenced by the alleged discrepancies in the Truth-in-Lending disclosure statement.  In addition, appellee's vice president testified at the hearing before the district court that since the filing of the lawsuit, the forms complained of had been discontinued and, along with other forms utilized by appellee, are being re-evaluated by its attorneys.  We concur with the rationale of the *Watkins* decision that Congress did not intend by the 1974 and 1976 amendments to make certification of class actions mandatory in every TILA lawsuit.

*Id.* at 1378.

*Shroder,* as did *Watkins,* made clear that "[p]laintiffs can recover when they are able to show technical violations of TILA."[9]  *Id.*

Both *Shroder* and *Watkins* properly recognized that Congress, by its 1974 and 1976 amendments to TILA, intended to encourage class action suits in particular TILA cases.  Although the Cable Act, passed subsequent to the two amendments of TILA does not reflect a like intention on the part of Congress, we are satisfied that the question of whether a class action should be certified under both acts must be considered on a case-by-case basis.

We are further satisfied that the factors that must be weighed in determining whether a class action should be certified in a Cable Act case are substantially the same factors that *Shroder* and *Watkins* determined were the relevant factors to be considered in determining whether a class action was superior to an individual action in a TILA case.  As did the district courts in *Shroder* and *Watkins,* we state in the next part of this memorandum opinion the reasons why a class action is not superior to other available methods for the fair and efficient adjudication of the controversy presented by this particular case within the meaning of Rule 23(b)(3).

## IV

Plaintiff's prayer for relief and stipulations of fact agreed to by the parties establish the technical nature of plaintiff's claim.  Paragraph 28 of the stipulation states that the class that the plaintiff seeks to represent would constitute at least 198,000 persons.  Paragraph 39 of the stipulation, however, establishes that neither plaintiff nor any member of the alleged 198,000 person class, in fact suffered any "economic, pecuniary, or out of pocket financial loss, injury or damages."  At oral argument, plaintiff contended that the class he

8. The *Shroder* court noted that "the district court in *Watkins,* in denying class certification on the grounds of lack of superiority, ... held that: 'If the purpose of the Act (and the 1974 amendment) in these cases of technical violations with no actual damages was to secure compliance with the Act's disclosure requirements rather than to punish the unheeding violator, then this court believes maintenance of the class action (at least at this time) is an unnecessary overreaction to the violation here.' "  *Id.* at 1377–78.

9. *Shroder* quoted with approval the following passage from page 401 of *Watkins:* " 'Courts which have considered the question have properly recognized the permissive rather than mandatory nature of class actions and that the determination whether to certify a class in the Truth-in-Lending context is still to be made on a case-by-case basis, bearing in mind the traditional prerequisites found in 23(a) and (b).' "  *Id.* at 1377.

sought to represent would be entitled to a summary judgment recovery of $198,000,-000.00.

Section 551(f)(3) of the Cable Act authorizes an aggrieved person to equitable or declaratory relief for any violation of the Act. It is significant but not surprising that plaintiff does not seek any equitable relief. · For paragraph 33 of the stipulation establishes that approximately 1,965 subscribers requested their names and addresses to be withheld from any mailing list before defendants amended their notice pursuant to the time the *Warner* case was decided in the District of Kansas. *See* Stipulations of Fact at ¶ 40.

More significantly, however, plaintiff has no complaint whatsoever as to either the form or the substance of the amended notice voluntarily prepared and distributed by the defendant after the *Warner* case was decided.[10] If plaintiff was in a position to assert a claim for equitable relief and if it could be determined that plaintiff would be entitled to equitable relief, such relief could be more conveniently granted in an individual rather than a class action suit for the reason that a mandatory injunction requiring a change in the privacy notice could be made binding upon all necessary parties by the service of notice pursuant to Rule 65, Fed.R.Civ.P.

Plaintiff contends that under *Warner v. American Cablevision of Kansas City*, 699 F.Supp. 851 (D.Kan.1988), the violations of the Cable Act of which he complains are not merely technical, but are substantive. The difficulty with that contention is that the question of whether the violations of the Cable Act should be considered to be technical or substantial for class certification purposes simply was not presented in that case. In addition, it is apparent that although Judge Saffels concluded that the defendant had failed to comply with five sections of the Cable Act (sections 551(a)(1), 551(a)(1)(A), 551(a)(1)(B), 551(a)(1)(C), and 551(a)(1)(E)), for purposes of assessing liquidated damages he made an express finding that the defendant had only "committed two violations of the Cable Act" which he identified as "American's failure to provide Warner with the required disclosure at the time the service was installed, and the inadequacy of the disclosure eventually made...." 699 F.Supp. at 859. And in regard to those two violations, he concluded that those two violations "cannot be considered a continuous violation measured in days," within the meaning of section 551(f)(2)(A) of the Cable Act.[11]

It is not appropriate for this Court to indicate at this time whether we agree or disagree with Judge Saffels' grant of plaintiff's motion for summary judgment in *Warner*. It is appropriate to state that while a plaintiff in a single action is entitled to recover liquidated damages for any violation of the Cable Act, such a determination properly may not be considered a

---

**10.** The decision in *Warner* was handed down on October 18, 1988. Defendant ACKC responded to this decision with a revised privacy notice, allegedly in compliance with the requirements of the Cable Act. This notice was mailed by defendant ACKC to all active subscribers in December 1988, prior to defendant's knowledge of plaintiff's claims or impending lawsuit. Stipulations of Fact, ¶ 40.

**11.** Plaintiff in this case disagrees with Judge Saffels' conclusion in regard to how liquidated damages should be assessed.

Plaintiff, at oral arguments, stated that he sought total recovery in the amount of $198,-000,000.00. However, in his suggestions in support of motion for summary judgment, plaintiff submitted two theories of recovery under the Cable Act's provision for liquidated damages. Plaintiff's first theory alleges either $3,000.00 or $4,000.00 total damages per plaintiff class member, reflecting $1,000.00 per violation by defec-

tive notices mailed in 1985, 1986, 1987 and possibly 1988. Damage calculations based upon that theory total $594,000,000.00 or $792,000,-000.00, far exceeding $198,000,000.00.

Plaintiff's second, and preferred theory of damages was based upon a continuing violation theory, which would provide for $100.00 per day of violation. At that rate, defendants would be liable for 1,352 days of violations at $100.00 per day, or $135,200.00 total damages for each class member. That figure multiplied by 198,-000 class members would total $26,679,600,-000.00. Defendant correctly points out, in its suggestions in opposition to plaintiff's motion for summary judgment, that under plaintiff's preferred theory of damages plaintiff seeks to maintain a $27,000,000,000.00 class action, a figure substantially greater than the $198,000,-000.00 class action plaintiff described at oral argument.

substantial rather than a technical violation for class certification purposes for the reason that the question of the nature of the violation simply is not presented for determination in a single action case.[12] We therefore conclude that plaintiff's reliance on *Warner* to support his motion for class certification is untenable.

## V

The Cable Act provides every individual subscriber to cable television with an appropriate remedy by way of individual actions for violations of the requirement of that Act, including but not limited to the recovery of damages, attorney's fees and court costs. Denial of plaintiff's motion for certification of a class would not operate to the prejudice or detriment of any putative class member's potential claims under the Cable Act.

For the reasons stated, we find and conclude that defendants' motion to deny certification should be granted and plaintiff's motion to certify class should be denied. Plaintiff concedes that no actual damages have been suffered by him or any putative class member as a result of defendants' alleged violations of the Cable Act. No member of the proposed class has evidenced any interest in this litigation. The putative class members have a clear means to redress any statutory violation by way of individual lawsuits.

## VI

On March 30, 1990, for reasons fully stated in a memorandum filed that day,[13] we entered the following orders:

ORDERED (1) that this Court will rule defendants' pending motion to deny class certification and plaintiff's pending motion for class certification before it considers and rules the parties' pending motions for summary judgment. It is further

ORDERED (2) that on or before April 10, 1990, counsel for plaintiff and counsel for the defendants shall prepare, serve, and file their separate responses to this Order (2) in which each party shall state whether this Court, in addition to its entry of an order that will either deny or grant class certification, should also enter appropriate additional orders pursuant to 28 U.S.C. § 1292(b), Rule 54(b), Fed.R.Civ.P., or both that will afford the aggrieved party the opportunity to seek immediate appellate review in the Court of Appeals of this Court's order either denying or granting class certification.

The parties shall also state the reasons for the positions stated in their respective responses.

Order at 12–13.

Plaintiff's response to Order (2) stated that utilization of 28 U.S.C. § 1292(b), or Rule 54(b), Fed.R.Civ.P., or both "would be both expeditious and cost-effective" and that "plaintiff wholeheartedly concurs in the Court's assessment that utilization of the referenced procedural devices would enhance the probability that the parties may obtain prompt and final appellate consideration of the class certification ruling herein." Plf's Response at 2 (Doc. # 114). Plaintiff concluded its response by stating that plaintiff "accordingly moves that the Court enter appropriate orders pursuant to 28 U.S.C. section 1292(b) or Rule 54(b),

**12.** Judge Saffels, for example, concluded that the defendant failed to comply with section 551(a)(1)(E) requirement "to 'clearly and conspicuously' spell out 'the limitations provided by [the Cable Act] with respect to the collection and disclosure of information by a cable operator and the right of the subscriber ... to enforce such limitations.'" 699 F.Supp. at 857. Although the *Warner* court found that the "actual text of section 551 [was] set out at the end of the disclosure," it nevertheless concluded that the notice did not meet the "clear and conspicuous" requirement of that section because the full text of section 551 was "set out in smaller type than the rest of the disclosure, and it is buried in the

full text of section 551 and therefore hard to find." *Id.* It is indeed difficult to find a better example of what would be considered to be a technical violation for class certification purposes.

**13.** This Court's March 30, 1990 memorandum and orders directing further proceedings is incorporated and made a part of this memorandum opinion by this reference. Those orders were, of course, entered before this Court indicated in any way how it would rule the class certification motions that were pending before it.

Fed.R.Civ.P., or both, in addition to its orders ruling on the ·class certification motions herein." [14]   *Id.*   The court believes that utilization of the procedural devices aforementioned would aid considerably in the expeditious termination of this litigation. The court further believes that utilization of these devices is proper under controlling case law as set out in the court's order of March 30, 1990. Accordingly, plaintiff's motion for such orders will be granted.

Upon entry of the order denying class certification in this case, it will be appropriate for the court to dismiss claims of others who could have become members of the class, if one had been certified. The court believes that that order of dismissal should be entered as a final judgment as to those claims, there being no just reason for delay.

For the reasons above stated, a separate order will be entered this date certifying this order denying class certification for immediate appeal under 28 U.S.C. § 1292(b). That separate order also will enter final judgment on the order entered herein dismissing claims alleged in the complaint in this case as to all others except the named plaintiff, Keith Wilson, Jr.

Accordingly, it is

ORDERED (1) that plaintiff's motion to grant certification of a class action is hereby denied. It is further

ORDERED (2) that defendants' motion to deny class certification is hereby granted. It is further

ORDERED (3) that the complaint in this case is hereby dismissed without prejudice as to all others than the named plaintiff Keith Wilson, Jr.

---

**14.** Although defendants' response to Order (2) stated that "defendants reserve their right to support or oppose a certification of the class action issue for appeal until they have had the opportunity to review the Court's decision" (Defts' Response at 2, Doc. 116) Defendants also stated that they "agree with the Court that sound reasons of judicial economy and efficiency as well as the particular facts of this case may justify this Court exercising its discretionary powers either under 28 U.S.C. § 1292(b) or Fed.R.Civ.P. 54(b) to certify its pending ruling on the class issue for appeal purposes. Indeed, it is likely that certification of the class issue for appeal will be appropriate." *Id.* at 1–2.