**Andrew PARKER and Eric DeBrauwere, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**TIME WARNER ENTERTAINMENT CO., L.P. and Time Warner Cable, a division of Time Warner Entertainment Company, L.P., Defendants.**

No. 98 CV 4265(ILG).

United States District Court, E.D. New York.

Jan. 9, 2001.

Peter Steven Linden, Kirby, McInerney & Squire, LLP, New York City, for plaintiffs.

Landis C. Best, Jonathan D. Thier, Cahill, Gordon & Reindel, New York City, George W. Sampson, Hagens, Berman LLP, Seattle, WA, for defendants.

## MEMORANDUM & ORDER

GLASSER, District Judge.

Before the court are plaintiffs' objections to Magistrate Judge Azracks' recommenda-

tion that class certification under 23(b)(3) be denied and that certification under 23(b)(2) be limited to plaintiffs' declaratory and injunctive claims under the subscriber policy provisions of the Cable Communications Policy Act of 1984. For the reasons that follow and after careful consideration of her Report & Recommendation ("R & R"), Magistrate Judge Azrack's recommendations are adopted and the plaintiffs' objections are denied.

### Background

Plaintiffs Andrew Parker and Eric De-Brauwere are cable television subscribers who receive their cable service from defendant Time Warner Cable, a division of defendant Time Warner Entertainment Co. Plaintiffs allege that defendants violated the subscriber privacy provisions of the Cable Communications Policy Act of 1984 ("Cable Act"), 47 U.S.C. §§ 521 *et seq.*, as well as a host of state consumer protection laws, by disclosing and selling personally identifiable information about its subscribers to third parties and by failing to provide subscribers with clear and conspicuous notice of its disclosure of such information. Plaintiffs' Amended Complaint seeks redress for the alleged Cable Act violations in the form of monetary relief (statutorily mandated individual damages and actual damages resulting from defendant's unjust enrichment) and injunctive relief (a declaratory judgment and an injunction restraining defendants from further Cable Act violations).

In an Amended Memorandum & Order entered on November 8, 1999, Judge Korman of this Court, reversing his prior decision, denied defendants' motion to dismiss the Amended Complaint on the ground that it failed to state a cause of action under the Cable Act. Judge Korman found that the Amended Complaint stated a claim in alleging that Time Warner (i) failed adequately to notify subscribers that it was selling information gathered from third party sources along with information it collected directly from subscribers, 1999 WL 1132463 at *5 (E.D.N.Y.1999), and (ii) improperly disclosed subscribers' programming selections without first providing a valid opt-out. *Id.* at *11. Prior to the issuance of the Amended Mem-

orandum & Order. Time Warner revised its privacy notice by including, for example, a warning that personally identifiable information may be combined with information obtained directly from a subscriber and disclosed for marketing purposes and that programming selections similarly may be disclosed unless a subscriber indicates that he wishes to opt out.

Plaintiffs have not yet moved for class certification, as this court stayed them from filing a class certification motion pending resolution of defendant's motion to deny certification, but indicate in their complaint that they will pursue certification pursuant to Rules 23(b)(2) and (3) for a plaintiff class of approximately 12 million cable subscribers in 23 states whose privacy interests allegedly were violated by defendants' disclosure and sale of subscriber information. (Pls.' Amended Class Action Complaint, ¶¶ 32–37) Defendants argue that certification should be denied as a matter of law under both subdivisions. No discovery has been conducted concerning the purported class, and plaintiffs accordingly contend that defendants' motion for denial of certification should be viewed as a premature motion to dismiss under Rule 12(b)(6) and that defendants carry the burden of proving why a class action is not warranted.

Before a plaintiff moves for class certification, a defendant may "test the propriety of the action" by a motion for denial of class certification. *Brown v. Milwaukee Spring Co.*, 82 F.R.D. 103, 104 (E.D.Wis. 1979) (denying certification on defendants' motion). Even where defendant moves for denial of class certification before plaintiff has sought certification, the burden of establishing the propriety of a class action remains with the plaintiff. *See id.; see also Cook Co. College Teachers Union v. Byrd,* 456 F.2d 882 (7th Cir.), *cert. denied,* 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972) (same); *Campbell v. A.C. Petersen Farms,* 69 F.R.D. 457 (D.Conn.1975) (same). In order to maintain a class action, Rule 23, Fed. R.Civ.P., requires a movant to satisfy all four requirements of Rule 23(a)—numerosity, commonality, typicality, and fair and adequate protection of the class by the repre-

sentative plaintiffs—*and* to qualify under one of the three subdivisions of 23(b). Fed. R.Civ.P. 23; Newberg & Conte, Newberg on Class Actions, § 3.01, at 3–7 (3d ed.1992). Subdivision 23(b)(2) provides for class litigation where a defendant has acted on grounds generally applicable to the class, thereby making injunctive or declaratory relief appropriate for the class. Subdivision 23(b)(3) provides for class litigation where the court, upon closely examining the case, determines that common issues of law or fact dominate over individual issues, and that a class action would be a superior means of adjudicating the controversy. If a class is certified pursuant to Rule 23(b)(3), strict notice and opt out requirements will apply which are not mandated for the other subdivisions of Rule 23.

In an R & R issued on October 2, 2000, Magistrate Judge Azrack recommended that the court grant in part defendants' motion to deny certification as a matter of law under both Rules 23(b)(2) and (3). The Magistrate Judge presumed that plaintiffs could satisfy the requirements of Rule 23(a), but concluded that certification of plaintiffs' damages claim under 23(b)(2) should be denied as a matter of law because plaintiffs' request for monetary relief predominates. (R & R, 10–11) The Magistrate rested her predominance determination on two pillars: first, plaintiffs' own argument that, without injunctive relief, defendant would be "immunized" from liability, and second, that plaintiffs were seeking a "significant" sum of money in connection with the alleged Cable Act violations. As for plaintiffs' efforts to obtain injunctive and declaratory relief, however, the Magistrate recommended that 23(b)(2) certification was appropriate pursuant to 23(c)(4), which permits a district court to limit the issues as to which certification is granted. (R & R, 13–14) With respect to plaintiffs' efforts to obtain certification under Rule 23(b)(3), Magistrate Judge Azrack found that plaintiffs failed to demonstrate the superiority of a class action over individual actions and, accordingly, recommended that certification be denied. (R & R, 14–16) Finally, in view of her determinations with respect to the purported class action, the Magistrate recommended that the court decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

## Class certification under 23(b)(2)

 Certification under 23(b)(2) is only appropriate for class actions where the relief sought is exclusively or predominantly declaratory or injunctive. Rules Advisory Committee Notes to 1966 Amendments to Rule 23 (reprinted at 39 F.R.D. 69, 102 (1966)). The issue of whether injunctive relief predominates is committed to the discretion of the district court, presumably because reasonable courts can and do reach opposite results on similar facts. Newberg, § 4.14, at 4–49. Plaintiffs argue that certification under 23(b)(2) is appropriate because their request for injunctive relief is as significant as their request for monetary relief. Defendants, in turn, argue against certification pursuant to Rule 23(b)(2), and contend that plaintiffs' request for injunctive relief: (i) is moot considering the fact that defendant already has changed its policy to meet the concerns articulated by Judge Korman in oral argument on plaintiffs' motion to dismiss and (ii) is mere window-dressing, especially in view of plaintiffs' failure to request a preliminary injunction. Magistrate Azrack predicated her denial of 23(b)(2) certification of plaintiffs' monetary damages claim on the "realities of this litigation[,]" specifically citing plaintiffs' acknowledgment that they wish to strip defendants of "millions of dollars" in profits and "at a minimum, hundreds of dollars" in actual damages and their insistence that absent class certification, defendants would be immunized from liability. (R & R, 10) While suggesting that some courts have "analyzed whether the monetary relief sought was 'incidental' to the equitable [r]elief," the Magistrate found these "realities" sufficient to establish the predominance of monetary relief. (*Id.* at 10–12, n. 4)

Before determining whether the Magistrate's denial of certification under Rule 23(b)(2) of plaintiffs' monetary damages claim was supported by the relevant law, it should be noted that a number of commentators have taken the position that determining whether one form of relief actually predominates in some quantifiable sense is a wasteful and impossible task that should be avoided.

*See, e.g.,* Charles Alan Wright, Alan R. Miller & May Kay Kane, 7A Federal Practice and Procedure § 1775 (2d ed.1986); Newberg & Conte, Newberg on Class Actions, § 4.14, at (3d ed.1992).[1] Nevertheless, the requirement that injunctive relief predominate before a 23(b)(2) class action will be certified has been adopted by the Second Circuit in *Eisen v. Carlisle & Jacquelin ("Eisen II"),* 391 F.2d 555, 564 (2d Cir.1968), *later proceeding, Eisen v. Carlisle & Jacquelin ("Eisen III"),* 479 F.2d 1005 (2d Cir.1973), *vacated on other grounds,* 417 U.S. 156, 164 n. 4, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (not questioning Eisen II's holding that subdivision (b)(2) applied "only to actions exclusively or predominantly for injunctive or declaratory relief."), and the court is bound to apply it here.

In applying the predominance requirement of Rule 23(b)(2) to this case, it is useful to begin with a brief discussion of the concerns underlying the predominance requirement and the factors used to assess predominance. One of the most thorough discussions of the predominance requirement was provided by the Fifth Circuit in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 412–16 (5th Cir. 1998). The court there began by observing that the purpose of Rule 23(b)(2)'s predominance requirement is to ensure a degree of cohesiveness that would otherwise be easily disrupted when a plaintiff class seeks monetary remedies, since monetary remedies "are more often related directly to the disparate merits of individual claims." *Id.* at 413.

> As a result, a class seeking substantial monetary remedies will more likely consist of members with divergent interests ... In contrast, because of the group nature of the harm alleged and the broad character

of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members .... The underlying premise of the (b)(2) class—that its members suffer from a common injury properly addressed by classwide relief—'begins to break down when the class seeks to recover back pay and other forms of monetary relief to be allocated based on individual injuries.' ... Thus, as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases, ... thereby making class certification under (b)(2) less appropriate.

*Id.* (internal citations omitted).

In explaining this distinction, the *Allison* court indicated that monetary relief "predominates" when "its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case." *Id.* Applying these assumptions to a purported plaintiff class, the court noted that monetary relief predominates:

> unless it is incidental to requested injunctive or declaratory relief. By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief... Ideally, incidental damages should be *only those to which class members automatically would be en-*

---

**1.** Rejecting the predominance approach in favor or a more practical approach, Newberg suggests that whenever the court determines that the 23(a) prerequisites are satisfied and that declaratory or injunctive relief sought is an integral part of the relief for the class, certification pursuant to 23(b)(2) is appropriate. With this approach, Newberg notes that four options are available to a district court:

> First, under Rule 23(c)(4)(A), the court could limit the Rule 23(b)(2) certification to certain issues only. Second, the court could certify the injunction claims under Rule 23(b)(2) and the damages claims under Rule 23(b)(3).

> Third, the court could certify the entire class initially under Rule 23(b)(2), bifurcate the trial so that the defendant's liability potentially for both forms of relief is determined initially, and reconsider the class certification category if the plaintiffs and the class are successful at the liability stage. Finally, the court could certify special claims or issues under Rule 23(b)(2) and treat all the nondesignated claims or issues as individual or incidental ones to be determined separately after liability to the class had been adjudicated.

> *Id.,* at 4–51 (citations omitted).

*titled once liability to the class (or subclass) as a whole is established.* That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.

*Id.* at 415 (internal citations omitted) (emphasis added). Assuming that a district court denies 23(b)(2) certification under these principles because monetary relief is the predominant relief sought, the court in *Allison* indicated that Rule 23(b)(3), with its enhanced procedural safeguards, is the appropriate means of class certification. *Id.* at 413.

Courts following the basic principles described in *Allison* have generally permitted certification under 23(b)(2) only when monetary relief is "incidental" to injunctive or declaratory relief. One case in which a request for monetary relief *was* found to be incidental to a request injunctive relief and therefore appropriately certified under Rule 23(b)(2) is *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439 (N.D.Cal.1994) (cited in *Allison,* 151 F.3d at 415). There, the court found that liability on the part of defendant entitled a class of plaintiffs to a statutorily mandated damage award. Plaintiffs in *Arnold* were wheelchair users who alleged that defendant did not afford disabled persons full and equal access to its theater accommodations. Having identified the cohesiveness of the class and the homogeneity of the members' interests as the salient factors on which the availability of the (b)(2) class action form hinges, the court in *Arnold* found (b)(2) certification appropriate:

> Analyzing the proposed class in terms of this criterion, it is clear that the claims of the class members are remarkably homogenous. As noted above ..., in this case the class members, rather than challenging individual actions taken by the defendant against each of them separately, all challenge the same actions: defendant's failure to change certain architectural features found at its various theaters. The challenged design features affect all class members in almost precisely the same way because of *common distinguishing characteristics* shared by all the class members: their status as wheelchair-using or semi-ambulatory disabled persons. This fact lends the proposed class an extraordinary degree of homogeneity, far greater than that of even the average Title VII disparate treatment suit in which plaintiffs allege that many separate actions against individuals manifest a common pattern and practice of discrimination. In view of this high degree of homogeneity, it is clear that this suit is a paradigm of the type of action for which the (b)(2) form was created.

*Id.* at 451–52.

In finding a sufficient degree of homogeneity in the plaintiff class, the *Arnold* court distinguished a line of cases cited by defendant in which certification was denied on two grounds: first, those cases did not involve civil rights cases—for which 23(b)(2) was specifically designed—but rather federal antitrust laws or other business regulatory statutes, and second, those cases all involved "damage claims in which the quantum of damages suffered involved a complicated, individual-specific calculus." *Id.* at 452. The *Arnold* court found that the damages claim would not unduly complicate the class action because the damages sought by plaintiffs under the California Civil Code corresponded directly to the statutory minimum of $250 for each instance in which a disabled class member visited a theater owned by defendant and was subjected to legally inadequate accommodations there, or was deterred from visiting such a theater by her knowledge of inadequate accommodations at the facility. *Id.* at 453–54. (Plaintiffs also sought punitive damages, but the court had determined in an earlier order that punitive damages were not available under the relevant provision of California law. *Id.* at 453 n. 6.) Finally, the court found that the adjudication of the damages claim would be relatively simple, as it

would entail "only (1) proof of the access situation at each theater over the course of the period at issue—from three years prior to the filing of this suit until the present; (2) determination of the legal sufficiency under § 54.1 of the accommodations at each theater during that period; and (3) proof of the number of occasions that each plaintiff visited and was subjected to inadequate accommodations at a UA theater during the relevant period." *Id.* at 453.

In a case captioned *In re Visa Check/Mastermoney Antitrust Litigation,* 192 F.R.D. 68, 88 (E.D.N.Y.2000), Judge Gleeson certified a class pursuant to Rule 23(b)(2) where the relief requested was both injunctive and monetary. A group of retailer and merchant plaintiffs moved to certify a class of four million merchants in order to challenge a rule issued by a number of credit card associations requiring plaintiffs who accepted their credit cards also to accept their debit cards. Plaintiffs sought a large damages award, as well as an injunction ending the allegedly illegal tie between debit and credit cards. The court found that the "highly significant" injunctive relief sought by plaintiffs was *"as important* as the damages claimed." *Id.* at 88. In contrast to the cases relied on by defendants in *Visa Check,* the court there found that plaintiffs had *not* sought an injunction only "as an aside[.]" *Id.* at 89 (emphasis added) (quoting *Kaczmarek v. International Business Machines, Corp.,* 186 F.R.D. 307, 313 (S.D.N.Y.1999) (finding 23(b)(2) inappropriate for plaintiffs primarily seeking money damages for breach of contract, breach of warranty, misrepresentation and violation of New York Deceptive Business Practices Act)). The court's determination as to the significance of the damages award also was based on its comparison of the effects of the requested injunctive and monetary relief: "Here, the preliminary damages estimate is approximately $8 billion. By the same methodology, the requested injunction would save the putative class $63 billion over the next decade. The requested injunction is clearly not window dressing." *Id.* at 89.

In *Gelb v. American Telephone & Telegraph Co.,* 150 F.R.D. 76 (S.D.N.Y.1993), the court in an action alleging market fraud was faced with the issue of whether to certify a plaintiff class of all persons who had used AT & T long distance calling cards since 1987 and were financially responsible for payments incurred through that use. Plaintiff alleged that he was seeking both injunctive relief and compensatory or "incidental" damages. Despite AT & T's insistence that the huge numbers of cardholders affected and the large sum of money implicitly at stake demonstrated that damages were not incidental to injunctive relief, the court found no basis upon which to conclude that plaintiff's sole motivation was financial. It noted instead that "[p]laintiff has sought to curtail [d]efendants' allegedly misleading advertising and to compel a more forthright description of the rate structure." *Id.* at 78. Even the fact that the damages sought would need to be calculated individually, while potentially precluding damages under the filed rate doctrine, was insufficient to bar certification under 23(b)(2). Moreover, the court was persuaded by the admonition of Wright and Newberg that the predominance inquiry presents a needless expenditure early in litigation. *Id.* at 78–79. Accordingly, the court reserved plaintiff's possible claim for monetary damages until such time as the merits of plaintiff's claim of injunctive relief are determined and permitted plaintiff to pursue his injunctive claim (without reference to damages) as a 23(b)(2) class action.

Turning to this case, it appears that Magistrate Judge Azrack's recommendation that certification be limited to plaintiffs' equitable claims was not clearly erroneous or contrary to law.[2] While the *Arnold* case does suggest

---

**2.** The standard for reviewing a Magistrate Judge's recommendations are familiar. When timely objection has been made to a portion or portions of a Magistrate Judge's report, the district court must "make a de novo determination ... of any portion of the magistrate's disposition to which specific written objection has been made." Fed.R.Civ.P. Rule 72(b). *See also,* 28 U.S.C. § 636(b)(1). In addition, 28 U.S.C. § 636(b)(1) affords the district court broad latitude in considering a Magistrate Judge's recommendation, even if no party objects to it. *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989). The judge may then accept, reject, or modify, in whole or in part, the Magistrate Judge's proposed findings and recommendations.

that 23(b)(2) certification may be appropriate for statutorily mandated individual damages awards, the statutory damages claim here is but one aspect of plaintiffs' request for monetary relief. Thus it cannot be said that the entirety of plaintiffs' damages claim is "incidental" to their request for injunctive relief. Unlike in *Arnold*, plaintiffs here not only attempt to compel a statutorily mandated individual damages award, but also seek disgorgement of profits earned by defendant as a result of the allegedly unlawful disclosures and sale of subscriber information. In opposing the denial of class certification, plaintiffs attempt to minimize the significance of their request for *actual* damages; read in conjunction with the Amended Complaint, however, it is clear that plaintiffs' request for statutory damages—which plaintiffs suggest will amount to, "at a minimum, hundreds of dollars" (Amended Complaint, §§ 77, 82)—constitutes but a tiny fraction of the total liability—which plaintiffs estimate will be in the millions of dollars" (Amended Complaint, § 48)—they will ask the court to impose on defendants for the alleged Cable Act violations. The fact that the bulk of damages sought by plaintiffs are not incidental to the injunctive relief requested suggests that *Arnold*, and the rationale for certification articulated therein, does not compel certification here. As for the Magistrate Judge's decision to deny certification of the damages claim at this stage in the litigation, rather than revisit the issue after determining liability, as in *Gelb*, this too is not inconsistent with the relevant authority. While *Gelb* and Newberg suggest that a court may reserve certification of the damages claim until after liability is established, nowhere is it indicated that a court must do so. And where, as here, the court is persuaded that plaintiffs are not primarily seeking injunctive or declaratory relief, it is within the court's discretion to deny certification. Thus, the Magistrate Judge's recommendation that certification of plaintiffs' damages claim be denied was appropriate.

### Class certification under 23(b)(3)

█ Plaintiffs also argue that Magistrate Azrack erroneously denied certification pursuant to Rule 23(b)(3). That rule requires plaintiffs to demonstrate "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Defendants argue that certification under 23(b)(3) should be denied as a matter of law because the highly individualized nature of the alleged privacy violations destroys the commonality of issues required by 23(b)(3) and because allowing plaintiffs to proceed on their claims through a class action would be unduly burdensome to the parties and the court. Plaintiffs vigorously maintain that certification under 23(b)(3) is necessary because common issues predominate and because a class action is the superior mechanism for addressing the alleged violations, given the prohibitively high cost of litigating individual Cable Act violations and the low recovery to each aggrieved subscriber.

In the R & R, Magistrate Judge Azrack recommends that certification be denied as a matter of law under 23(b)(3) because a class action is not the superior manner of proceeding. (R & R, 14–16) The R & R specifically notes that the superiority prong is undermined by the fact that any person who is aggrieved by the alleged Cable Act violations can obtain both injunctive and monetary relief, including statutory and punitive damages, attorneys' fees and costs, by proceeding on an individual basis. Apart from the adequacy of individual relief, the R & R also notes two additional factors that weigh against certification: first, a class action would force defendants to incur "administrative expenses largely out of proportion to the small recovery of individual members of the proposed class" and, second, permitting a class action would force the court to "expend substantial amounts of time on supervision of

While plaintiffs here have objected to Magistrate Judge Azrack's R & R, the court notes that their objections were not timely. The R & R was issued on October 2, 2000, and clearly stated that objections were to be filed with the Clerk of the Court within ten days of receipt. Plaintiffs filed their Memorandum in support of their objection to the R & R on November 20, 2000. Thus, the court is not bound to consider the arguments advanced therein.

the discovery and litigation processes." (*Id.* 15–16) While stating that these two considerations would be of little significance if the Cable Act did not provide individual consumers with the means for obtaining full relief, Magistrate Judge Azrack states that they are relevant where such means are provided. Although the parties devote considerable space in their briefs to the question of whether common issues of law or fact predominate, Magistrate Judge Azrack's recommendation concerning the denial of 23(b)(3) certification is based solely on her assessment that plaintiffs' fail to satisfy the superiority requirement.

Though the decisional authority on class certification in the context of alleged Cable Act violations is scant, the authority that does exist supports Magistrate Judge Azrack's finding that a class action is not the superior method for addressing a violation of § 551 of the Cable Act, though for reasons other than those cited in the R & R. *Wilson v. American Cablevision of Kansas City,* 133 F.R.D. 573 (W.D.Mo.1990), is the only case that has considered whether a class action is the superior mechanism to address a violation of § 551(f) of the Cable Act. Because *Wilson* is the only such case and because the parties sharply dispute its importance here, a close examination of its holding and rationale is necessary. The court in *Wilson* denied 23(b)(3) certification in a case in which violations of § 551(f) were technical in nature and no evidence was presented to indicate that actual damages were suffered by any class member as a result of defendant's alleged violations. *Id.* at 577. The court in *Wilson* based its holding in part on the concern that class certification not be used in conjunction with statutory schemes such as the Cable Act, to permit disproportionate damages recoveries. Analogizing the disclosure provisions of the Cable Act to those in the Truth–In–Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (1994), another federal statute that requires disclosure to consumers of certain financial data relating to consumer credit transactions, *Wilson* noted that courts considering motions to certify 23(b)(3) class actions in TILA cases have denied 23(b)(3) certification where (i) plaintiffs' claims were based upon technical violations of disclosure

requirements; (ii) no claim for actual damages was made; and, (iii) where liquidated damages, if awarded to a large potential plaintiff class, would result in a punishment to the defendant that is disproportionate to the harm suffered by the plaintiffs. 133 F.R.D. at 575–76 (citing *Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412 (S.D.N.Y.1972) (denying class action status); *Rogers v. Coburn Finance Corp. of DeKalb,* 54 F.R.D. 417 (N.D.Ga.1972) (following *Ratner*); *Wilcox v. Commerce Bank,* 55 F.R.D. 134 (D.Kan.1972), *denial of certification aff'd* at 474 F.2d 336 (10th Cir.1973) (same)). Moreover, *Wilson* noted that even after TILA was amended in 1974 to permit class actions (albeit with a cap on class recovery of $500,000), courts continued to deny class certification under 23(b)(3) on the theory that a class action was not superior to other methods of adjudication. *Wilson,* 133 F.R.D. at 576–77 (citing *Fisher v. First National Bank of Omaha,* 548 F.2d 255 (8th Cir.1977) (affirming district court's refusal to certify a 23(b)(3) class); *Watkins v. Simmons and Clark, Inc.,* 618 F.2d 398 (6th Cir.1980) (denying 23(b)(3) certification; "although technical violations of the complex TILA disclosure requirements are sufficient to establish the cause of action, the purpose of the act is to insure compliance by creditors and not to punish an unwary violator."); *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1377 (11th Cir.1984) (adopting rationale and holding of *Watkins*)).

Having set forth the factors that prompted the denial of class certification in these TILA cases, the court in *Wilson* noted that "the factors that must be weighed in determining whether a class action should be certified in a Cable Act case are substantially the same factors..." and proceeded to apply those factors to the alleged § 551(f) violation. *Wilson,* 133 F.R.D. at 577. As with the TILA cases, the court found that plaintiffs were alleging violations of a purely technical nature and that no member of the purported class had suffered any "economic, pecuniary, or out of pocket financial loss, injury or damages." · *Id.* at 577. Moreover, the court noted that no member of the purported class had evinced an interest in the litigation, and

that, even if an aggrieved cable user did develop such an interest, he would have a clear means to address the statutory violation by way of an individual lawsuit. *Id.* at 579. Accordingly, *Wilson* denied plaintiffs' motion for class certification.[3]

Despite, or perhaps because of, *Wilson's* clear articulation of factors weighing against class certification, plaintiffs in their opposing papers both distinguish *Wilson* and criticize it. Plaintiffs contend that, unlike in *Wilson*, the damages alleged here include statutory, actual and punitive damages, as well as disgorgement of profits; that the violations they allege are not technical in nature, but willful and substantive; and, finally, that the principle adhered to in *Wilson* that damages should not be disproportionate to the harm actually suffered does not apply here where defendants not only have failed to issue adequate notice to customers of the information that was being collected about them but have taken the additional step of selling that information.

Plaintiffs' arguments are insufficient to persuade the court to take a different course from that taken in *Wilson*. As for plaintiffs' argument that this action, unlike *Wilson*, is class-worthy because it involves more than simply statutory damages, plaintiffs explicitly concede that actual damages will be of little significance when they state, in arguing the superiority of a class action, that "[p]laintiffs' notice violation claim under Section 551(a) is unlikely to involve any individual actual damages issue whatsoever[,]" (Pls.' Mem. 22 n.19) and that "[p]laintiffs need not demonstrate that any invasion of privacy hurt [their] feelings, offended or embarrassed them, or otherwise aggrieved them." (*Id.* at 25) The primacy of statutory damages is further underscored by at least one other court in a decision that subsequently was remanded, *Warner v. American Cablevision of Kansas City, Inc.,* 699 F.Supp. 851, 859 (D.Kan.1988),

*remanded with instructions to vacate,* No. 88–2820 (10th Cir. Jan. 4, 1989). In *Warner,* the court noted that it would be "difficult to conceive of how a subscriber might suffer 'actual' injury as a result of a cable operator's failure to timely provide the subscriber with the proper disclosures as required by section 551(a)(1)."

With respect to plaintiffs' attempt to cast Time Warner's actions as something other than a technical violation, this too is unpersuasive. *Wilson's* observation that it would be "difficult to find a better example of a technical violation for class certification purposes" than a privacy notice that included the text of § 551 is on point. 133 F.R.D. at 579 n. 12. The technical nature of defendants' alleged violation of the Cable Act is further evident from Judge Korman's comments concerning the adequacy of defendants' disclosure in its notice provision at the April 30, 1999 hearing on defendants' motion to dismiss, in which the Court stated: "I could write this, I could rewrite this, it would add another three lines to it and it would solve all their objectives, and I doubt it would solve all their objections, and I doubt it would cause you any problems." (Tr. of April 30, 1999 hearing, 84)

Finally, as for plaintiffs' argument that *Wilson* is inapposite because defendants here have taken the additional step of actually marketing subscribers' personal information, this distinction does not disturb the fundamental principle articulated in *Wilson* that a class action is not the superior manner of proceeding where the liability defendant stands to incur is grossly disproportionate to any actual harm sustained by an aggrieved individual. For reasons already mentioned, this principle is of particular relevance where, as here, plaintiffs essentially have conceded that no actual harm was suffered by individual subscribers. Although plaintiffs are correct when they argue that certifi-

---

**3.** The court's consideration in *Wilson* was limited to 23(b)(3), as plaintiffs were not seeking declaratory relief. The court, however, did observe in dicta that if plaintiffs had sought equitable relief, "such relief could be more conveniently granted in an individual rather than a class action suit for the reason that a mandatory injunction requiring a change in the privacy notice could be made binding upon all necessary parties by the service so notice pursuant to Rule 65, Fed.R.Civ. P." *Wilson,* 133 F.R.D. at 578. Although Magistrate Judge Azrack relies on this observation in the section of the R & R that addresses 23(b)(2) (R & R, 11–12), it is relevant to superiority under 23(b)(3), not to predominance under 23(b)(2).

cation should not be denied solely because of the possible financial impact it would have on a defendant, *Wilson*'s consideration of the financial impact on a defendant was based on the disproportionality of a damages award that has little relation to the harm actually suffered by subscribers, and on the due process concerns attendant upon such an impact. Stated differently, what *Wilson* meant to avoid, and what plaintiffs here have not persuasively argued should not be avoided, is a misuse of the procedural mechanism provided by a class action suit to turn what is fundamentally a consumer protection scheme for cable subscribers into a vehicle for the financial demise of a cable service provider that failed to comply with technical aspects of that scheme. Similarly unpersuasive is plaintiffs' contention that the denial of certification here would likely mean that defendants would never be forced to provide relief to the scores of individuals whose privacy rights were violated by Time Warner's flawed disclosure practices; the statutory scheme provided in § 551(f) specifically provides recourse to *any* individual who feels that his privacy interests have been violated and even compensates them for their costs of proving such a violation if they prevail. A class action therefore is not the only means of ensuring that defendants can be held accountable for their violations.

In addition to criticizing and distinguishing *Wilson*, plaintiffs raise a number of other arguments, none of which are sufficient to outweigh the superiority considerations discussed earlier. Plaintiffs first argue that Magistrate Judge Azrack placed too much emphasis on only one of the factors relevant to the superiority analysis under 23(b)(3)—manageability—and that she should have considered other factors relevant to the superiority analysis.[4] Even assuming for a moment that Magistrate Judge Azrack considered only manageability, plaintiffs' argument that the court should overlook her determination with respect to manageability is diffi-

cult to reconcile with the restrictions imposed by 23(b)(3). Where a purported class promises to cause serious manageability problems, as would surely be the case where potential class members total 12 million subscribers in 23 states, defendants correctly point out that courts do not hesitate to dismiss based on manageability concerns alone. *See, e.g., In re Hotel Telephone Charges*, 500 F.2d 86, 90 (9th Cir.1974) ("Actions have been dismissed on the basis of manageability problems alone, particularly in cases involving large numbers of plaintiff class members."); *Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 73 (D.N.J. 1971) ("The manageability requirement of Rule 23 is a significant factor that must be given due weight in reaching a determination on the propriety of class representation in any given case."); *Ortiz v. Dep't of Hous. and Urban Dev.*, 448 F.Supp. 953, 957 (D.P.R.1977) ("The class purportedly represented by plaintiff is so large as to be unwieldy.... When the class is so unmanageable, certification must be denied.").

However, the court in this case need not reach so far, as consideration of the factors identified in Rule 23(b)(3) other than manageability disfavor certification. As for factor (A), "the interest of the members of the class in individually controlling the prosecution or defense of separate actions," Magistrate Judge Azrack implicitly touches on this factor when she states that the necessity for a class action is reduced by such availability is relevant. In their Memorandum in Opposition to defendants' Motion to Deny Certification, plaintiffs themselves acknowledge that Magistrate Judge Azrack considered the availability of individual litigation but disagree with her conclusion that its availability should be a factor. Plaintiffs contend that the availability of individual relief does not outweigh the benefits of a class action in a case such as this one, where the practical realities of attempting to obtain individual recovery outweigh any interest in individual

---

4. Rule 23(b)(3) provides that the factors relevant to certification include: "(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desira- bility or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Plaintiffs contend that Magistrate Judge Azrack should have considered, but did not, the first three aspects set forth here.

litigation. (Pls.' Mem. 20–21) Plaintiffs are correct that a class action may be superior where members of the class are likely to have little interest in "individually controlling the prosecution or defense of separate actions[.]" Fed.R.Civ.P. 23(b)(3)(A). As this court has commented once before in *Harrison v. Great Springwaters of America, Inc.*, 1997 WL 469996, *9 (E.D.N.Y. June 18, 1997) (citing *Colbert*, 1995 WL 20821), the interest in pursuing individual relief is typically lower in actions, such as this one, to enforce compliance with consumer protection laws, since damage awards in such cases are generally too small to permit a single consumer to bring suit. However, the argument that class actions should be available because subscribers may be discouraged from bringing individual actions is less persuasive where, as here, the statute under which recovery is sought specifically provides for "reasonable attorney's fees and other litigation costs reasonably incurred." 47 U.S.C. § 551(f)(2)(C). Thus, some of the concerns that might favor certification in any other consumer protection scheme are not present here.

As for factor (B), "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," to the extent the R & R fails to identify other litigation pending against Time Warner for the same Cable Act violations alleged here, this factor clearly favors defendants and weighs against certification. Magistrate Judge Azrack's failure to identify Fed.R.Civ.P. 23(b)(3)(B) therefore is not of consequence. The same thing can be said of factor (C), "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Because there are no cases pending against Time Warner for the disclosure and notice violations alleged here, plaintiffs would not benefit from application of this factor.

Because the three factors other than manageability either weigh in Time Warner's favor or are not pertinent to the circumstances here, it cannot be said that Magistrate Judge Azrack improperly relied on manageability alone in denying certification. To the extent plaintiffs cite district court cases within this Circuit for the proposition that manageability concerns are not sufficient to defeat superiority, *see, e.g., In re Medical X–Ray Film Antitrust Litig.*, 1997 U.S. Dist. LEXIS 21936, *37 (E.D.N.Y. Dec. 10, 1997); *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 528 (S.D.N.Y.1996) (citing *In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 356 (E.D.Pa.1976)), those cases are not on point. Plaintiffs in both of those cases alleged that defendants had engaged in a conspiracy in violation of the section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, a statutory scheme that differs in important respects from § 551(f) of the Cable Act. Although individual claimants may institute litigation under the Sherman Act, it makes perfect sense that, in the absence of a fee-shifting provision such as that contained in § 551(f), these claimants would have a strong disincentive against doing so given the cost of bringing their claims. *See, e.g., NASDAQ Market–Makers*, 169 F.R.D. at 527–528 ("the cost associated with individual claims may require claimants with potentially small claim amounts to abandon otherwise valid claims simply because pursuing those claims would not be economical.") (quoting *In re Potash*, 159 F.R.D. 682, 699 (D.Minn.1995)). However, in the case of § 551(f) of the Cable Act, the disadvantages associated with bringing individual litigation are mitigated if not eliminated by the statute's private attorney general provision. Thus, manageability is not the only factor that diminishes the superiority of a class action here, as the statutory recovery scheme provided by § 551(f) suggests that the disincentives against individual actions that might otherwise render a class action superior do not exist.

Plaintiffs finally aver that the Magistrate Judge failed to consider the predominance of common issues of law and fact. They contend that liability in this case arises from a single course of conduct that affected all class members in the same manner. Accordingly, plaintiffs argue that certifying a class action would promote judicial economy because it would avoid a proliferation of duplicative individual actions and prevent conflicting interpretations of the Cable Act's privacy provisions. Defendants question the commonality of the factual and legal issues presented in the Amended Complaint in view of

the individualized nature of the privacy injuries suffered by each purported class member. Even assuming that the privacy violation experienced by each subscriber who was subjected to an allegedly improper disclosure of personal information is not unique and does not require individualized proof of subjective feelings of aggrievement, plaintiffs have not demonstrated why judicial economy would be furthered by certification here. Significantly, they cannot point to a single action against Time Warner alleging the same Cable Act violations and therefore fail to raise even a remote danger that denial of certification will result in a plethora of inconsistent interpretations.

### Supplemental Jurisdiction Over Plaintiffs' State Law Claims

■■■ Having properly recommended that class certification under 23(b)(2) be limited to plaintiffs' claims for equitable relief and be denied under 23(b)(3) based on superiority concerns, Magistrate Judge Azrack's recommendation that the court decline to exercise jurisdiction over plaintiffs' pendent state and common law claims also was consistent with the law. A district court's power to decline to exercise pendent jurisdiction is well-recognized. "In exercising that discretion, a district court is required to 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction....'" *Block v. First Blood Assoc.*, 988 F.2d 344, 351 (2d Cir.1993) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Warning against "[n]eedless decisions of state law[,]" the United States Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) held that: "If it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong...."

Class certification has been deemed appropriate only on the narrow issue presented by plaintiffs' Amended Complaint of whether defendants' privacy notice and disclosure of personally identifiable information violate §§ 551(a) and (c) of the Cable Act. If the court were to exercise pendent jurisdiction over plaintiffs' state and common law claims, which involve negligent misrepresentation and unjust enrichment statutes in 23 states, those claims clearly would predominate since they would require extensive proof, present a host of legal and factual issues not raised by the Cable Act claim, and require consideration of relief that is not available under the Cable Act. Because resolution of those state claims is not "so closely tied to questions of federal policy," their adjudication in this proceeding would be inappropriate.

### Conclusion

For the reasons discussed above, the Magistrate Judge's recommendation that class certification be limited under 23(b)(2) to plaintiffs' request for declaratory and injunctive relief and that certification under 23(b)(3) de denied are adopted.

SO ORDERED.