Vacated and remanded for further proceedings. Judge JON O. NEWMAN concurs with a separate opinion.
*15 UNDERHILL, District Judge.
This appeal raises issues concerning the appropriateness of certifying a plaintiff class of potentially millions of cable television subscribers in a case seeking various forms of relief, including injunctive relief, actual damages, and statutory damages under the Cable Communications Policy Act of 1984. These issues arise from decision of defendants’ motion to deny class certification as a matter of law, which was issued before discovery on issues affecting class certification. For the reasons that follow, we vacate the order appealed from and remand for further proceedings.

Background

Andrew Parker and Eric DeBrauwere (collectively “Parker”) subscribe to cable television services provided by Time Warner Cable, a division of Time Warner Entertainment Co. (“Time Warner”). Parker claims that Time Warner violated the provisions of the Cable Communications Policy Act of 1984 (“Cable Act”), 47 U.S.C. § 521 et seq., and several state consumer protection laws, by selling and disclosing personally identifiable subscriber information to third parties, and by failing clearly and conspicuously to inform the subscribers of such disclosure, as required by the Cable Act. Parker seeks monetary relief in the form of statutory damages, actual damages, punitive damages and attorneys’ fees, as well as declaratory and injunctive relief to prevent further Cable Act violations.
Parker commenced this action in the Eastern District of New York on June 16, 1998. On October 30, 1998, appellants filed an Amended Class Action Complaint. In September 1999, Parker served extensive discovery requests, to which Time Warner objected in October 1999. On November 8, 1999, the District Court issued an “Amended Memorandum and Order Denying Defendant’s Motion to Dismiss Complaint,” rejecting Time Warner’s contention that the Amended Complaint failed to state a cause of action under the Cable Act. In issuing that order, Judge Edward R. Korman relied upon the allegations of the Amended Complaint that Time Warner: (1) failed to provide adequate notification to subscribers that it was selling information gathered from third-party sources along with information it collected directly from subscribers; and (2) improperly disclosed subscribers’ programming selections without first providing a valid means for subscribers to opt out. Prior to the issuance of the written ruling on its motion to dismiss, Time Warner changed its privacy notice to provide a warning regarding the potential for disclosure of personally identifiable information, as well as a means for subscribers to opt out of releasing their programming selections to third parties.
Soon after the ruling on its motion to dismiss, Time Warner moved for an order denying class certification as a matter of law. In January 2000, Magistrate Judge Joan M. Azrack, to whom various discovery disputes had been referred, stayed discovery pending a ruling on Time Warner’s motion to deny class certification. Later that month, Senior District Judge I. Leo Glasser stayed determination of Parker’s “contemplated motion for class certification” and confirmed that discovery remained stayed pending decision of Time Warner’s motion. As a result of the court’s rulings, no motion for class certification has been filed and no discovery establishing the size of the prospective plaintiff class or the extent of the alleged statutory violations has occurred. Parker has indicated in pleadings that he would, under Rule 23(b)(2) and 23(b)(3), pursue class certification for a class of Time Warner cable subscribers whose privacy interests allegedly were violated by the disclosure and sale of subscriber information.
*16 On October 2, 2000, Magistrate Judge Azrack issued a Recommendation and Report (“R & R”) on Time Warner’s motion to deny class certification. Parker v. Time Warner Entertainment Co., L.P., 2000 U.S. Dist. Lexis 20131 (E.D.N.Y.2000). In the R & R, Judge Azrack considered whether class certification was appropriate under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and recommended that the District Court grant in part Time Warner’s motion to deny class certification as a matter of law. Although Judge Azrack assumed that Parker would be able to satisfy the threshold requirements for class certification under Rule 23(a), ultimately she concluded that certification of the damages claim under 23(b)(2) should be denied because Parker’s request for monetary relief predominated over the claim for injunctive relief. Judge Azrack recommended against certification of a class under Rule 23(b)(3) principally on the ground that a class action was not the superior means of adjudicating this controversy. Concerning Parker’s request for injunctive and declaratory relief, Judge Azrack recommended that Rule 23(b)(2) certification be granted, noting that, under Rule 23(c), a district court is authorized “to determine which classes and issues, if any, should be appropriately certified.” Id. at *8. Finally, Judge Azrack recommended that the District Court decline to exercise supplemental jurisdiction over the pendent state law claims, which arose under the deceptive practices statutes of twenty-three states.
Parker objected to the R & R, and on January 9, 2001, Judge Glasser entered an order adopting the recommendations to limit class certification under Rule 23(b)(2) to Parker’s declaratory and injunctive claims, to deny class certification under Rule 23(b)(3), and to decline supplemental jurisdiction over the state law claims. Parker v. Time Warner Entertainment Co., L.P., 198 F.R.D. 374 (E.D.N.Y.2001). Judge Glasser noted that he had precluded Parker from filing a motion for class certification, but that the Amended Complaint indicated that certification would be sought “pursuant to Rules 23(b)(2) and (3) for a plaintiff class of approximately 12 million cable subscribers in 23 states whose privacy interests allegedly were violated by defendants’ disclosure and sale of subscriber information. Defendants argue that certification should be denied as a matter of law under both subdivisions.” Id. at 376 (citation to Amended Complaint omitted). Judge Glasser also explained that, because “[n]o discovery has been conducted concerning the purported class,” Parker contended that the “motion for denial of certification should be viewed as a premature motion to dismiss under Rule 12(b)(6) and that defendants carry the burden of proving why a class action is not warranted.” Id. The District Court rejected that argument, holding that “[bjefore a plaintiff moves for class certification, a defendant may ‘test the propriety of the action’ by a motion for denial of class certification,” and that “the burden of establishing the propriety of a class action remains with the plaintiff.” Id. (citations omitted).
Judge Glasser began his analysis of the motion to deny certification under Rule 23(b)(2) by recognizing that certification under that rule “is only appropriate for class actions where the relief sought is exclusively or predominantly declaratory or injunctive.” Id. at 377. He cited the Fifth Circuit’s decision in Allison v. Citgo Petroleum Corporation, 151 F.3d 402 (5th Cir.1998), for the proposition that the “purpose of Rule 23(b)(2)’s predominance requirement is to ensure a degree of cohesiveness that would otherwise be easily disrupted when a plaintiff class seeks monetary remedies, since monetary remedies ‘are more often related directly to the *17 disparate merits of individual claims.’” Id. at 378 (quoting Allison, 151 F.3d at 413). “ ‘Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.’ ” Id. at 378-79 (quoting Allison, 151 F.3d at 415).
In determining whether the instant case conformed to the predominance standard of Rule 23(b)(2), Judge Glasser recognized that, although the court in Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D.Cal.1994), suggested that Rule 23(b)(2) certification “may be appropriate for statutorily mandated individual damages awards, the statutory damages claim here is but one aspect of plaintiffs’ request for monetary relief. Thus it cannot be said that the entirety of plaintiffs’ damages claim is ‘incidental’ to their request for injunctive relief.” Parker, 198 F.R.D. at 381. Judge Glasser adopted the recommendation that Parker’s damages claims not be certified, noting that the “fact that the bulk of damages sought by plaintiffs are not incidental to the injunc-tive relief requested”[1] suggests that Arnold “does not compel certification here.” Id.
Time .Warner argued in the district court that “certification under [Rule] 23(b)(3) should be denied as a matter of law because the highly individualized nature of the alleged privacy violations destroys the commonality of issues required by [Rule] 23(b)(3) and because allowing plaintiffs to proceed on their claims through a class action would be unduly burdensome to the parties and the court.” Id. In short, Time Warner asserted that neither the commonality requirement nor the superiority requirement of Rule 23(b)(3) could be met in this case. The District Court cited Wilson v. American Cablevision of Kansas City, 133 F.R.D. 573 (W.D.Mo.1990), as the only case to consider whether a class action is the superior vehicle for litigating a violation of section 551(f) of the Cable Act. Focusing on the “disproportionality of a damages award that has little relation to the harm actually suffered,” Judge Glasser followed the Wilson rationale that the class action suit was not intended “to turn what is fundamentally a consumer protection scheme for cable subscribers into a vehicle for the financial demise of a cable service provider that failed to comply with the technical aspects of that scheme.” Parker, 198 F.R.D. at 384.
Judge Glasser also considered arguments that Judge Azrack had relied too heavily on manageability of the class action as a factor in determining the appropriateness of certification under Rule 23(b)(3). Although he conceded that manageability of the action was a serious consideration in a “case where potential class members total 12 million subscribers in 23 states,” Judge Glasser concluded that other factors had been considered and that Judge Azrack’s recommendation had not “improperly relied on manageability alone in denying certification.” Id. at 385.
Judge Glasser adopted Magistrate Judge Azrack’s recommendations on every issue, including whether to decline supplemental jurisdiction over the state law claims in the Amended Complaint. Accordingly, the District Court issued an order limiting class certification under Rule *18 23(b)(2) to plaintiffs’ request for declaratory and injunctive relief and denying certification under Rule 28(b)(3). On September 26, 2001, this Court granted Parker’s petition pursuant to Rule 23(f) for leave to appeal the District Court’s order. Parker seeks relief from so much of the District Court’s order as precludes certification of claims for incidental monetary damages under Rule 23(b)(2) and as denies class certification under Rule 23(b)(3).

Discussion

Standard of Review

The standards governing review of class certification decisions under Rule 23 are well known. Generally, a district court’s decision regarding class certification is reviewed for abuse of discretion. In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 132 (2d Cir.2001). An appellate court, however, is “noticeably less deferential ... when [the district] court has denied class status than when it has certified a class,” Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir.1999) (quoting Lundquist v. Security Pacific Auto. Fin. Servs. Corp., 993 F.2d 11, 14 (2d Cir.1993)) (internal quotation marks omitted).
A district court vested with discretion to decide a certain matter is “empowered to make a decision — of its choosing— that falls within a range of permissible decisions. A district court ‘abuses’ or ‘exceeds’ the discretion accorded to it when (1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) its decision — though not necessarily the product of a legal error or a clearly erroneous factual finding — cannot be located within the range of permissible decisions.” Zervos v. Verizon New York, Inc., 252 F.3d 163, 168-69 (2d Cir.2001) (footnotes omitted) (emphasis in original). In contrast, de novo review is “review without deference,” id. at 168, and is “ ‘traditionally’ associated with appellate assessments of a district court’s legal conclusions.” Id. at 168 n. 3 (quoting Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).
With these principles in mind, the standard of review applicable to class certification decisions can be succinctly summarized as follows: “We review class certification rulings for abuse of discretion. We review de novo the district court’s conclusions of law that informed its decision to deny class certification.” Turner v. Beneficial Corp., 242 F.3d 1023, 1025 (11th Cir.2001) (citations and quotations omitted) (reviewing class certification issues in a Truth in Lending Act statutory damages case).

Denial of Certification under Rule 23(b)(2)

Rule 23(b)(2) provides that an action may be maintained as a class action if, in addition to the threshold requirements of numerosity, commonality, typicality, and adequacy of representation, “the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.” Generally, when monetary relief is requested in tandem with injunctive and declaratory relief, the court must determine whether the requested monetary relief predominates over the claims for equitable relief. The Advisory Committee note to Rule 23(b)(2) provides that the “subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages.” Fed.R.Civ.P. 23(b)(2), advisory committee note (1966).
At the time the District Court made the certification decision in this case, the Second Circuit had not yet established a stan *19 dard for evaluating the predominance issue under Rule 23(b)(2). Judge Glasser therefore reasonably turned to the Fifth Circuit’s decision in Allison v. Citgo Petroleum Corporation, 151 F.3d 402 (5th Cir.1998). Under the Allison predominance analysis, monetary relief predominates over equitable relief “unless it is incidental to requested injunctive or declaratory relief.” Id. at 415. The Fifth Circuit characterized incidental damages as damages “that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.” Id. (emphasis in original).
The District Court granted class certification under Rule 23(b)(2), but limited certification to Parker’s request for injunctive and declaratory relief, concluding that Parker’s requested monetary relief predominated over the claims for injunctive and declaratory relief.[2] Magistrate Judge Azrack based her determination of predominance on the “realities of this litigation,” R & R at *12, and on the perception that “plaintiffs’ own words minimize the importance of injunctive relief to their complaint.” Id. The Magistrate Judge concluded that “injunctive relief for violations of § 551 [of the Cable Act] could be as readily attained in an individual action as in a class action. Certainly any injunction requiring modification of the defendants’ [privacy notice] could be made binding on all necessary parties by service of notice pursuant to Federal Rule of Civil Procedure 65.” Id. at *14 (citation omitted). The District Court approved the recommendation to certify the claims for injunctive and declaratory relief but not any of the claims for monetary damages.
The District Court’s decision creates a somewhat anomalous result. Having adopted the Magistrate Judge’s recommendations, the District Court apparently agreed that it was unnecessary to certify the claims for injunctive relief, yet only those claims were certified. Moreover, having certified a Rule 23(b)(2) class for injunctive relief, the Court declined to certify even those monetary claims, notably the statutory damage claims, that Parker claims are incidental to the injunctive relief certified. In short, the District Court gave Parker only what the Court concluded Parker did not need.
When deciding the Rule 23(b)(2) issue, the District Court relied on Allison, which was the leading precedent on the issue of predominance analysis at the time *20 the District Court ruled. The Second Circuit, however, has since addressed the standards for evaluating predominance for purposes of Rule 23(b)(2). In Robinson v. Metro-North Commuter R.R., 267 F.3d 147 (2d Cir.2001), the Second Circuit declined to follow the Allison predominance calculus, observing that it foreclosed Rule 23(b)(2) certification in all actions seeking actual damages “even if the class-wide in-junctive relief is the form of relief in which the plaintiffs are primarily interested.” Id. at 163 (internal quotation marks and citations omitted). Ultimately, the Robinson panel held that, when considering a motion for Rule 23(b)(2) certification of a claim seeking both injunctive relief and non-incidental monetary damages, “a district court must ‘consider[ ] the evidence presented at a class certification hearing and the arguments of counsel,’ and then assess whether (b)(2) certification is appropriate in light of ‘the relative importance of the remedies sought, given all of the facts and circumstances of the case.’ ” Id. at 164 (quoting Hoffman v. Honda of Am. Mfg., Inc., 191 F.R.D. 530, 536 (S.D.Ohio 1999)).
Robinson holds that, when making an ad hoc determination, a district court “should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.” Id.
Although it seems a bit unfair to Judge Glasser to characterize as an abuse of discretion his failure to anticipate the holding of Robinson, it does appear that his ruling on the Rule 23(b)(2) certification issue is inconsistent with the guidance provided by Robinson. Moreover, an appellate court is, of course, bound to apply the law as it exists at the time of appeal. See Harper v. Virginia Dep’t of Taxation, 509 U.S. 86, 90, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); Whitney v. Empire Blue Cross & Blue Shield, 106 F.3d 475, 477-78 (2d Cir.1997). By adopting the R & R, the District Court appears to have concluded that the request for injunctive relief here is “insignificant” and a “cover for [Rule 23](b)(2) certification of claims that are brought essentially for monetary recovery.” Robinson, 267 F.3d at 164. Accordingly, it is not clear that Judge Glasser would have exercised his discretion to certify even the injunctive and declaratory relief claims under an ad hoe approach, if that approach caused him to conclude that the requested monetary relief predominates over the claims for equitable relief. Nor is it clear that Judge Glasser would have exercised his discretion to certify only the injunctive and declaratory relief claims under an ad hoc approach. Robinson suggests, without deciding, that incidental damages claims should ordinarily be certified along with injunctive and declaratory relief claims under Rule 23(b)(2), “because entitlement to [incidental] damages does not vary based on the subjective considerations of each class members’ claims, but ‘flow[s] directly from a finding of liability on the ... claims for class-wide injunctive and declaratory relief.’ ” Id. at 165 (quoting Allison, 151 F.3d at 416.).
In light of Robinson, the District Court’s decision of the Rule 23(b)(2) class certification issue must be reconsidered under the ad hoc approach. The Robinson ad hoc approach requires a district court to have detailed information about the circumstances surrounding the certification *21 issue, and indeed, favors a class certification hearing prior to decision of a Rule 23(b)(2) certification motion. Accordingly, it is likely that at least minimal class discovery must be conducted in order to provide the court with the factual information necessary to decide whether or not to certify a Rule 23(b)(2) class.
Because the District Court decided Time Warner’s motion on the basis of a legal standard later rejected by this Court and has not yet applied the broader approach later adopted by this Court, the decision to deny Rule 23(b)(2) class certification of the damages claims is vacated and remanded for further proceedings. On remand the District Court should conduct further fact finding and utilize the Robinson ad hoc approach in exercising its informed discretion whether to certify a class under Rule 23(b)(2) and, if so, whether to certify any aspect of the damages claims along with injunctive and declaratory relief.

Denial of Certification under Rule 28(b)(8)

Rule 23(b)(3) certification is appropriate where “questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superi- or to other available methods for the fair and efficient adjudication of the controversy.” Fed.R.Civ.P. 23(b)(3). The rule requires consideration of various factors, including “the interest of members of the class in individually controlling the prosecution or defense of separate actions,” Fed.R.Civ.P. 23(b)(3)(A), as well as “the difficulties likely to be encountered in the management of a class action.” Fed. R.Civ.P. 23(b)(3)(D).
In denying class certification under Rule 23(b)(3), the District Court focused on the superiority of class litigation, the technical nature of the claimed violations of the Cable Act, and the impact of a potentially huge class. The Court was particularly concerned about a damages award that would be disproportionately large compared to the harm actually suffered by the potential class members. “[A] class action is not the superior manner of proceeding where the liability defendant stands to incur is grossly disproportionate to any actual harm sustained by an aggrieved individual.” Parker, 198 F.R.D. at 383. Judge Glasser noted that there are due process concerns when the prospect of a stunningly large damages award looms as the result of technical violations of the Cable Act that affect potentially millions of subscribers. The District Court also noted that the case raised obvious manageability concerns: “Where a purported class promises to cause serious manageability problems, as would surely be the case where potential class members total 12 million subscribers in 23 states, defendants correctly point out that courts do not hesitate to dismiss based on manageability concerns alone.” Id. at 384.
The difficulty we have with these conclusions is that they are based on assumptions of fact rather than on findings of fact. The District Court precluded any class discovery and even the filing of a motion for class certification. Thus, it remains unknown what class Parker would have sought to certify and the numbers of potential class members in that proposed class. Although the Amended Complaint alleges that the total number of Time Warner cable subscribers number about twelve million in twenty-three states, Parker has given no indication that he would actually seek to certify a class of all twelve million subscribers. Indeed, counsel for Parker stated in a hearing before Magistrate Judge Azrack that the number of potential class members could not be identified without discovery on the issue: “[T]here is simply no number because we’ve had no *22 discovery as to the number of people who have actually been injured. We think it is a large number. We have no idea of whether it’s thirteen million or one million or 1,000.” George Sampson, Transe, of Motion Hearing (Sept. 9, 2000). Absent at least limited discovery concerning the composition of the class, the District Court had no evidence regarding the size of the recovery that Time Warner might face if the class claims were successful. Under the circumstances, the Court’s conclusion' that the size of the class would inevitably lead to “the financial demise” of Time Warner, Parker, 198 F.R.D. at 384, or even to significant manageability problems, was speculative.
We acknowledge Judge Glasser’s legitimate concern that the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues. Those issues arise from the effects of combining a statutory scheme that imposes minimum statutory damages awards on a per-consumer basis — usually in order to encourage the filing of individual lawsuits as a means of private enforcement of consumer protection laws — with the class action mechanism that aggregates many claims — often because there would otherwise be no incentive to bring an individual claim. Such a combination may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages — yet ones that are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award. It may be that the aggregation in a class action of large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions. If so, such a distortion could create a potentially enormous aggregate recovery for plaintiffs, and thus an in terrorem effect on defendants, which may induce unfair settlements. And it may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award. Cf. State Farm Mutual Auto. Ins. Co. v. Campbell, — U.S. —, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (“The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.”); BMW of North America, Inc. v. Gore, 517 U.S. 559, 580, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (noting that the “most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff.”). At this point in this case, however, these concerns remain hypothetical. There has been no class certification motion filed nor any actual evidence presented that raises a reasonable possibility that principles of due process may restrict an ultimate damages award. Accordingly, we decline to consider what limits the due process clause may impose.
Because the District Court decided Time Warner’s motion without the factual support necessary to support its legal conclusions, the decision to deny Rule 23(b)(3) class certification is vacated and this matter is remanded for further proceedings. Once it has the benefit of Parker’s motion to certify and the evidence relevant to that motion, the District Court will be in a position to exercise its informed discretion regarding the factors affecting Rule 23(b)(3) certification.

Conclusion

The decision of the District Court is vacated and the matter is remanded for *23 further proceedings. Each side shall bear its own costs.

. Both the R & R and the decision appealed from misquote the Amended Complaint as alleging that the claimed statutory damages will amount to "at a minimum, hundreds of dollars." 198 F.R.D. at 381, 2000 U.S. Dist. LEXIS 20131, at *12. The cited paragraphs of the Amended Complaint actually allege statutory damages of "at a minimum, hundreds of millions of dollars.” Amended Complaint, ¶¶ 77, 82.

. In making this determination, the District Court apparently assumed that statutory damages were incidental to the claimed injunctive relief, but also believed, incorrectly, that the actual damages sought by Parker far surpassed the statutory damages sought.
In opposing the denial of class certification, plaintiffs attempt to minimize the significance of their request for actual damages; read in conjunction with the Amended Complaint, however, it is clear that plaintiffs’ request for statutory damages — which plaintiffs suggest will amount to, "at a minimum, hundreds of dollars” (Amended Complaint, §§ 77, 82) — constitutes but a tiny fraction of the total liability — which plaintiffs estimate will be in the [“]millions of dollars” (Amended Complaint, § 48) — they will ask the court to impose on defendants for the alleged Cable Act violations. The fact that the bulk of damages sought by plaintiffs are not incidental to the injunctive relief requested suggests that Arnold [v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D.Cal.1994)], and the rationale for certification articulated therein, does not compel certification here.
Parker, 198 F.R.D. at 381. The Amended Complaint actually sought not hundreds of dollars of statutory damages, but hundreds of millions of dollars of statutory damages. The Amended Complaint also sought millions of dollars of actual damages. Thus, based solely on the allegations of the Amended Complaint, it would appear that the claimed statutory damages far exceed the claimed actual damages.